1

**ANDREWS & THORNTON**
ANNE ANDREWS (103280)
JOHN C. THORNTON (84492)
SEAN THOMAS HIGGINS (266888)
2 Corporate Park, Suite 110
Irvine, CA 92602
Telephone: 949/748-1000
949/315-3540 (fax)
aa@andrewsthornton.com
jct@andrewsthornton.com
shiggins@andrewsthornton.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WOODING, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>MONSTER ENERGY COMPANY, MONSTER BEVERAGE CORPORATION F/K/A HANSEN NATURAL CORPORATION, and DOES 1-10,<br><br>Defendants. | Case No.: SACV12-2090 DOC (JPRx)<br><br><u>CLASS ACTION</u><br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1.  VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*;<br><br>2.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br><br>3.  BREACH OF EXPRESS WARRANTY;<br><br>4.  BREACH OF IMPLIED WARRANTY; and<br><br>5.  UNJUST ENRICHMENT<br><br><u>DEMAND FOR JURY TRIAL</u> |

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

-1-



ORIGINAL

Plaintiff Jennifer Wooding ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Monster Energy Company, Monster Beverage Corporation f/k/a Hansen Natural Corporation and Does 1-10 (collectively "Defendants" or "Monster") and states:

## JURISDICTION AND VENUE

1.      This action was initially brought on November 5, 2012 in the Superior Court of the State of California, County of Orange – Civil Complex Center (Case No. 30-2012-00609716-CU-BT-CXC, Hon. Nancy W. Stock).

2.      On December 3, 2012, this action was removed from the above venue by Defendants Monster Energy Company and Monster Beverage Corporation pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 on the grounds that the action was removable under the Class Action Fairness Act of 2005.  Defendants conceded the amount in controversy exceeds the $5,000,000, exclusive of interest and costs, threshold, that the requisite diversity was present and that no there were no applicable exclusions of the Class Action Fairness Act of 2005.

## NATURE OF ACTION

3.      This is a consumer protection class action lawsuit about Defendants' false and misleading advertising of an energy drink containing an extremely dangerous and potentially lethal ingredient epigallocatechin-3-gallate ("EGCG"). Defendants manufacture, distribute, market and sell an energy drink called "Monster Rehab Green Tea + Energy" (also referred to as the "Product"), which

contains EGCG.  The labeling for Monster Rehab Green Tea + Energy appears below:



4.     Through its advertising and labeling, Defendants make the express and implied representations that Monster Rehab Green Tea + Energy is a healthful and rehydrating version of an energy drink.  Defendants' advertising and labeling promotes that Monster Rehab Green Tea + Energy is a non-carbonated, low calorie, green tea-sports drink, which contains coconut water, acai and goji berries, pineapple juice, electrolytes, and is loaded with EGCG.  Defendants' advertising

and labeling promotes Monster Rehab Green Tea + Energy as what you need to "rehabilitate" after a "hard day's night." In reality, consuming Monster Rehab Green Tea + Energy is dangerous and potentially lethal.

5. At no time herein, did Defendants make any attempt to warn consumers, including Plaintiff and the Class herein, that Monster Rehab Green Tea + Energy with its EGCG ingredient is a toxic and potentially lethal beverage that is well-documented in the medical literature to be associated with liver injuries, that the Product could cause serious adverse side effects, that persons with known liver conditions should not use the Product, that the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be taken on an empty stomach, that consumers cannot self-identify in advance of taking the Product whether they are likely to be susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice.

6. Contrary to Defendants' express and implied representations and warranties, which Plaintiff and the Class relied on to their detriment, Monster Rehab Green Tea + Energy is dangerous. Instead of being the safe energy drink that Defendants promised, Monster Rehab Green Tea + Energy causes dangerous hepatotoxic side effects, including without limitation, death, acute liver failure, hepatitis and other liver injuries. Despite knowing that Monster Rehab Green Tea

+ Energy could result in severe injury and even death, Defendants marketed and sold Monster Rehab Green Tea + Energy to tens of thousands of unsuspecting consumers without any warning whatsoever.

7.     Additionally, Defendants sold and continue to sell Monster Rehab Green Tea + Energy to tens of thousands of consumers through broad-based advertising and marketing campaigns that promote Monster Rehab Green Tea + Energy for its ability to "RE-FRESH, RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate", and by comparing it to sports drinks. Defendants' advertising and marketing also implies that Monster Rehab Green Tea + Energy should be used to rehydrate (or "Rehab") after a long night of partying or drinking alcohol.

8.     Defendants failed to inform consumers, including Plaintiff and the Class herein, that while Monster Rehab Green Tea + Energy may contain electrolytes which can aid in rehydration, unlike the sports drinks which contain electrolytes that Defendants compare their product to, consuming Monster Rehab Green Tea + Energy will likely to lead to dehydration due to the large amount of caffeine (a diuretic) in the Product.

9.     As a result of misrepresentations and omissions to their customers about the safety and efficacy of the Monster Rehab Green Tea + Energy, Defendants have taken millions of dollars from these consumers.

10.     Defendants' advertising campaign has been extensive and comprehensive, and they have conveyed these deceptive messages of safety and efficacy to consumers throughout the United States.  Defendants conveyed and continue to convey their deceptive claims about Monster Rehab Green Tea + Energy through a variety of media, including point of sale displays, magazines, the Internet and on Monster Rehab Green Tea + Energy's packaging.  A reasonable consumer would not buy Monster Rehab Green Tea + Energy at any time, and especially not after a night of heavy drinking or with preexisting liver conditions, knowing that it contained a known liver toxin (EGCG), in addition to diuretics.

11.     Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased Monster Rehab Green Tea + Energy in order to halt the dissemination of this false and misleading advertising campaign, correct the false, deficient and misleading labeling, and to obtain redress for those who have purchased Monster Rehab Green Tea + Energy.  Plaintiff alleges violations of the Consumers Legal Remedies Act, the Unfair Competition Law, breach of express warranty, breach of implied warranty, and unjust enrichment.

## PARTIES

### *Plaintiff*

12.     Plaintiff Jennifer Wooding is a resident of Huntington Beach, California.  During the class period, and before making her purchases, Plaintiff Wooding was exposed to, read and relied on Defendants' advertising claims,

---

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

-6-

including Monster Rehab Green Tea + Energy's labeling. In or about July or August of 2012, Plaintiff Wooding purchased for approximately $3 each four Monster Rehab Green Tea + Energy cans from 7-Eleven in Huntington Beach, CA. Plaintiff Wooding purchased Monster Rehab Green Tea + Energy believing it was reasonably safe and believing it was effective for its advertised use. Plaintiff did not know that ordinary consumption of the Product created serious adverse health risks or that it was ineffective for its advertised benefits when she purchased the Product. As a result of her purchases, Plaintiff Wooding suffered injury in fact and has lost money and property as a result of the unfair, deceptive, untrue and misleading advertising described herein, including the purchase price for products that are of little or no value and are dangerous. Had Plaintiff Wooding known of the potential health risks or that Monster Rehab Green Tea + Energy was ineffective for the advertised benefits she would not have purchased Monster Rehab Green Tea + Energy.

### *Defendants*

13.    Defendants Monster Energy Company and Monster Beverage Corporation f/k/a Hansen Natural Corporation (collectively "MEC") are California corporations, headquartered in Corona, CA. Since April 2002, MEC was and is regularly engaged in the business of licensing, manufacturing, formulating, packaging, distributing, marketing, advertising, and/or selling, either directly or indirectly, through third parties or related entities, so-called energy drink dietary

---

supplement products for sale to, and use by, members of the general public throughout the country, including Monster Rehab Green Tea + Energy.  According to Symphony IRI, MEC's "Rehab" line of Monster Energy drinks, which are available in five flavors – Rojo, Protean, Orangeade, Green Tea, and Tea + Lemonade – ranked number nine among the top twenty energy drinks in the United States for 2011 with $125.8 million in sales.

14.    At all times herein alleged, each of the acts of the employees were on behalf of, for the benefit of, at the direction of, and at the behest of MEC and were ratified by MEC. Further, each of the acts of the employees were done pursuant to and in accordance with corporate policy.

15.    The true names or capacities, whether individual, corporate, or otherwise, of Defendant DOES 1 through 10, inclusive, are unknown to Plaintiff who is therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff and the Class as alleged herein.

16.    At all times hereinafter alleged, "Defendants" include all herein named Defendants as well as Defendants DOES 1 through 10, inclusive.

17.    At all times herein alleged, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the

remaining Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff and the Class.

## FACTUAL ALLEGATIONS

### *The Monster Rehab Green Tea + Energy Product*

18.    In 2011, Defendants launched its "Monster Rehab®" line of non-carbonated rehydration energy drinks with electrolytes in 15.5-ounce aluminum cans.  Defendants first launched the Monster Rehab Tea + Lemonade flavor in February 2011, and followed that up by introducing three other flavors, including Monster Rehab Green Tea + Energy, in October 2011.

19.    Monster Rehab Green Tea + Energy is a trademarked product marketed and sold by Defendants.  As depicted on its label, Monster Rehab Green Tea + Energy contains the following ingredients:

///

///

///



20.     Throughout the class period, Monster Rehab Green Tea + Energy contained ingredients that caused it to be dangerous.  Specifically Monster Rehab Green Tea + Energy contains the ingredient epigallocatechin-3-gallate (also known as, and hereinafter referred to, as "EGCG"), a dangerous ingredient, with known hepatoxic effects including death, acute liver failure, hepatitis and other side effects involving the liver.

21.     Monster Rehab Green Tea + Energy also does not work as advertised. Monster Rehab Green Tea + Energy contains high amounts of caffeine, which is a

diuretic and does not provide the rehydration benefits as represented in Defendants' advertising and labeling.

### *EGCG, a Dangerous Ingredient Involved in the Market Withdrawal of Numerous Dietary Supplements, Finds Its Way Into Food Beverages*

22.    EGCG is a tea catechin found in green tea.

23.    However, numerous studies going back to the late 1990s recognized the liver-toxic effects of EGCG when used in the doses present in dietary supplements.

24.    Between 1999 and 2003, 13 cases of livery injury from Exolise (an EGCG product) were reported in France and Spain. In response, on April 4, 2003, the French Food Safety Agency of Health Products and Spanish health authorities recalled Exolise from the market. This was followed by a recall from Ireland and several other European countries.

25.    Nevertheless, looking for a replacement to ephedra after it was banned by the FDA in 2004, dietary supplement manufacturers in the United States began using EGCG in their products.

26.    Once such product containing EGCG carried the brand name Hydroxycut. Between 2002 and 2009, the Food and Drug Administration (FDA) received 23 Adverse Event Reports of Hydroxycut-associated liver toxicity.

27.    FDA confronted the manufacturer of Hydroxycut stating that:

---

Three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut capsules/caplets can cause idiosyncratic hepatotoxicity.

28.     In response to the FDA's confrontation, on May 1, 2009, the manufacturer of the EGCG-containing Hydroxycut line withdrew all 14 products from the market.  The recall received considerable coverage in publications from FDA and national news sources such as the Wall Street Journal, the New York Times and the Los Angeles Times.  Hundreds of lawsuits were filed across the country against the manufacturer of Hydroxycut.  The injuries ranged from hepatitis to liver transplants and death.

29.     Meanwhile, the peer-reviewed medical literature on the liver toxicity of products containing EGCG as well as serious adverse events reporting liver injuries from EGCG products around the globe continued to mount.

30.     In or about October 2011, Defendants introduced Monster Rehab Green Tea + Energy to the market.

31.     Despite the overwhelming publicity, regulatory action and medical literature on the toxicity of EGCG in the 15 years preceding introduction of Monster Rehab Green Tea + Energy to the market, at no time did Defendants make any attempt whatsoever to warn consumers, including Plaintiff and the Class, that an ingredient of Monster Rehab Green Tea + Energy, EGCG, is a known liver toxin, that the Product could cause serious adverse side effects,  that persons with

known liver conditions should not use the Product, that the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be taken on an empty stomach, that consumers cannot self-identify in advance of taking the Product whether they are likely to be susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice.

### *Defendants' Monster Rehab Green Tea + Energy Claims*

32.     Defendants conveyed their deceptive claims about Monster Rehab Green Tea + Energy through a variety of media, including magazines, the Internet, at parting events, and on the Monster Rehab Green Tea + Energy labels and packaging.

33.     Since the launch in October 2011, prominently placed on Monster Rehab Green Tea + Energy's label (pictured above) Defendants have consistently made the following claims:

> Our friends at the Rehab pool party in Vegas know all about recovering from a long night and together we came up with Monster Rehab® Green Tea + Energy.

Naturally loaded with EGCG antioxidants, infused with coconut water, quercetin, acai berry and goji berry. Monster Rehab® Green Tea + Energy delivers a triple threat that quenches thirst, hydrates like a sports drink, and brings you back after a hard day`s night.

Monster Rehab® Green Tea + Energy: RE-FRESH, RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate with a killer mix of green tea,  pineapple juice, electrolytes, and our bad-ass Monster Rehab® energy blend to fire you up.

Rehab The Beast!

34.    Defendants repeat and reinforce these same claims about Monster Rehab Green Tea + Energy on their website.[1]  On information and belief, the labeling and website for Monster Rehab Green Tea + Energy have not changed since the Product was introduced to the market.

35.    In addition to failing to disclose the dangers associated with Monster Rehab Green Tea + Energy, Defendants make several misrepresentations on their labeling and in their advertising. Defendants aggressively advertise Monster Rehab Green Tea + Energy as a hydration beverage. (*See* excerpted Product labeling

---

[1]    *See* Ex. B hereto (http://www.monsterenergy.com/us/en/products/rehab/ -!/products%3Agreen-tea (accessed 01/301/2013)).

above, Exhibit B).   Despite the representation that Monster Rehab Green Tea +
Energy will "hydrate like a sports drink," Monster Rehab Green Tea + Energy
contains caffeine, which at the level contained in the Product and to the ordinary
consumer like Plaintiff and the Class, will act as a diuretic. These diuretic effects
make Monster Rehab Green Tea + Energy ineffective as a hydration beverage.
The representation is further false and misleading since Monster Rehab Green Tea
+ Energy is nothing like a sports drink: not only does it contain less electrolytes
than the leading sports drinks, it contains large amounts of caffeine.  This stands in
stark contrast to the leading sports drinks which contain *no* caffeine.  Thus, unlike
sports drinks, and contrary to Defendants' representations, Monster Rehab Green
Tea + Energy does not hydrate.

　　　　36.　　Furthermore, contrary to Defendants' representation that Monster
Rehab Green Tea + Energy is "naturally" loaded with EGCG, on information and
belief, the EGCG contained in Monster Rehab Green Tea + Energy is synthetic.
Thus, the representation that the Product is "naturally" loaded with EGCG is both
false and misleading. Defendants' natural representations are further likely to
mislead consumers by providing reassurance that Monster Rehab Green Tea +
Energy is safe because of the reasonable perception "natural" supplements are
more healthful and less dangerous than synthetic, chemically produced dietary
supplements.

37.     Additionally, Monster Rehab Green Tea + Energy's labeling gives no indication of how much EGCG is contained in the Product.  To the contrary, the label merely lists the "Rehab Energy Blend" as containing 3200 mg and further lists numerous ingredients in the proprietary blend, without any indication of the amount of each ingredient.  There was no legal restriction preventing such disclosure, and in order for the Plaintiff and Class to be adequately informed of the risks attendant to Monster Rehab Green Tea + Energy such disclosure was reasonable and necessary. This omission was misleading and has prevented ordinary consumers from discovering the serious dangers involved in consuming Monster Rehab Green Tea + Energy.   Had any consumer been aware of the serious dangers of the Product, including Plaintiff and the Class, they would not have purchased it. Thus, the omission was material.

38.     Defendants' Monster Rehab Green Tea + Energy was created in conjunction with "Rehab Pool Party," a Las Vegas pool party notorious for excessive drinking.  Defendants' claims in its advertising and labeling that Monster Rehab Green Tea + Energy will help you "recover from a long night" and "bring[s] you back after a hard day's night" in the context of Rehab Pool Party explicitly and implicitly encourage consumers to use Monster Rehab Green Tea + Energy after a long night of drinking alcohol.  Defendants made these claims knowing that the Product contains diuretics and liver toxic ingredients, which further harms the livers of consumers who have been up all night drinking alcohol.

39.     The health problems associated with Monster Rehab Green Tea + Energy manifest themselves when consumers consume the Product at recommended dosage levels and even without drinking alcohol.  Nevertheless, the toxic effects of Monster Rehab Green Tea + Energy are more pronounced when consumers use it as recommended: after a long night of drinking alcohol. So too are the toxic effects pronounced when used by consumers with preexisting liver conditions, when taken on an empty stomach or when used on a chronic basis.

40.     As alleged herein,  Monster Rehab Green Tea + Energy is misbranded and adulterated and Defendants engaged in false advertising under California law, which imposes obligations on food and dietary supplement manufacturers, including without limitation, California Health and Safety Code §§ 110290, 110245 *et seq.*, 110380, 110100, 110085, 110390 *et seq.*, 110660, 110422, 110670, 110680, 110705, 110760, 110765, 110445, 110550,  110545, 110620, 110625, 110630, and related regulations and common law.

41.     The purpose of these laws is to protect consumers, like Plaintiff and the Class, from exposure to untested and unsafe products and ingredients, and to provide consumers like Plaintiff and the Class with adequate and truthful information about the safety, efficacy and content of the product.  These laws impose upon Defendants an affirmative duty to warn consumers, including Plaintiff and the Class, of the consequences of customary use of the product such as adverse side effects caused by ingredients within the product, of

contraindications, and any other information that will allow the consumer to make a fully-informed decision about whether to purchase and/or consume the product. These laws were designed to prevent the exact injuries alleged here.  But by selling Monster Rehab Green Tea + Energy with EGCG, and without adequate warnings about EGCG, Defendants have put consumers, including Plaintiff and the Class, at a significant and unreasonable risk. No reasonable consumer would have purchased or consumed Monster Rehab Green Tea + Energy if they knew that the Product was unsafe and ineffective.

42.     Notwithstanding significant and mounting evidence that Monster Rehab Green Tea + Energy contains ingredients which pose significant health risks, Defendants continue to market the Product.

43.     Despite the evidence of significant health risks, Defendants continue to make material misrepresentations and omissions in their advertising for Monster Rehab Green Tea + Energy, including on the Product's packaging and labeling.

44.     The advertising, marketing and promotion of Monster Rehab Green Tea + Energy was and remains deceptive and misleading in that it conceals the risks of liver injury and other serious health risks that Defendants knew or should have known, including without limitation that the EGCG contained in Monster Rehab Green Tea + Energy is a toxic and potentially lethal ingredient that is well-documented in the medical literature to be associated with liver injuries, that the Product could cause serious adverse side effects,  that persons with known liver

conditions should not use the Product, that the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be consumed on an empty stomach, that users cannot self-identify in advance of taking the Product whether they are susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice.

45.     Defendants similarly knew, or in the exercise of reasonable care ought to have known, that Monster Rehab Green Tea + Energy does not provide the hydration benefits as advertised.

46.     Defendants' "Monster Rehab" line of its energy drinks has been a huge sales success.  In the opening paragraph of its 2011 Annual Statement, Defendants report that "In 2011, our gross sales were $1.95 billion, compared to $1.49 billion in the previous year.  This achievement was primarily attributable to increased sales of Monster Energy® drinks…and in particular to our new Monster Rehab® line which was originally launched in March 2011."  And according to Defendants' CEO, the margins on Monster's Rehab brand, which retails for approximately $3 per can, are better than many of Defendants' other products.

///

///

///

## CLASS DEFINITION AND ALLEGATIONS

47.     Plaintiff brings this lawsuit on behalf of herself and the proposed Class members under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

All persons who purchased Monster Rehab Green Tea + Energy until the date notice is disseminated to the Class.  Excluded from the Class are Defendants and their officers, directors and employees and those who purchased Monster Rehab Green Tea + Energy for the purpose of resale.

48.     ***Numerosity***.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.

49.     ***Existence and Predominance of Common Questions of Law and Fact***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendants had adequate substantiation for their claims prior to making them, including without limitation that Monster Rehab Green Tea + Energy provides hydration benefits, that Monster Rehab Green Tea + Energy is naturally loaded with EGCG, and that Monster Rehab Green Tea + Energy rehydrates, revives, and rehabilitates;

---

(b)     whether Monster Rehab Green Tea + Energy was reasonably safe for consumption, specifically including whether the presence of EGCG in the Product presented a significant or unreasonable risk to Plaintiff and the Class;

(c)     whether Defendants concealed or omitted material information concerning the safety of Monster Rehab Green Tea + Energy, specifically including the safety of EGCG;

(d)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(e)     whether Defendants' alleged conduct violates public policy;

(f)     whether the alleged conduct constitutes violations of the laws asserted herein;

(g)     whether Defendants engaged in false or misleading advertising;

(h)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(i)     whether Plaintiff and Class members are entitled to an award of punitive damages; and

(j)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

50.     *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff asserts the same claims.

51.   *Adequacy of Representation*.   Plaintiff will fairly and adequately protect the interests of the members of the Class.   Plaintiff has retained counsel highly experienced in complex dietary supplement cases, and Plaintiff intends to prosecute this action vigorously.   Plaintiff has no adverse or antagonistic interests to those of the Class.

52.   *Superiority*.   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.   It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.

53.   Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and proposed Class members. Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

54.   Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

///

# COUNT I

## Violations of the Consumers Legal Remedies Act,

## California Civil Code §1750 et seq.

55.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

56.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750 et seq. (the "Act").  Plaintiff is a consumers as defined by California Civil Code §1761(d).  Monster Rehab Green Tea + Energy is a good within the meaning of the Act.

57.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Monster Rehab Green Tea + Energy:

> (5)     Representing that [Monster Rehab Green Tea + Energy]  [has] . . . characteristics, . . . uses [or] benefits . . . which they do not have . . .

*       *       *

> (7)     Representing that [Monster Rehab Green Tea + Energy] [is] of a particular standard, quality, or grade . . . if [it is] of another.

*       *       *

---

(9)    Advertising [Monster Rehab Green Tea + Energy] . . . with intent not to sell [it] as advertised.

*        *        *

(16)    Representing that the [Monster Rehab Green Tea + Energy] has been supplied in accordance with a previous representation when it has not.

58.    Defendants violated the Act by, as described herein, affirmatively representing through their advertisements and labeling that Monster Rehab Green Tea + Energy was safe and effective as described above when they knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

59.    Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

60.    Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.

61.    Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers within 30

days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks actual, punitive and statutory damages, as appropriate.

62.    Defendants' conduct is malicious, fraudulent and wanton.

63.    Pursuant to Civ. Code §1780(d), attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

## COUNT II

**Violations of California Business and Professions Code §17200 et seq.**

64.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

65.    California Business and Professions Code §17200 prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  For the reasons discussed above, Defendants have engaged in unlawful, fraudulent, unfair, deceptive, untrue and misleading business acts in violation of California Business and Professions Code §17200.

66.    California Business and Professions Code §17200 prohibits any "unlawful . . . business act or practice."  As set forth more fully herein, Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, inter alia:

(a)    making false and misleading statements,

(b)    making claims without any competent or reliable scientific evidence or substantiation that such claims are truthful and not misleading,

---

(c)    omitting, suppressing, and concealing material facts,

(d)    selling a food or dietary supplement that presents a significant and unreasonable risk of illness or injury when used as labeled, and

(e)    selling a product that contains untested, dangerous dietary ingredients.

67.    In the course of such conduct described herein, Defendants engaged in unlawful acts in violation of California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business and Professions Code §17200 *et seq.,* California Health and Safety Code §§ 110290, 110245 *et seq.,* 110380, 110100, 110085, 110390 *et seq.,* 110660, 110422, 110670, 110680, 110705, 110760, 110765, 110445, 110550,  110545, 110620, 110625, 110630, as well as violating related regulations and the common law.

68.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

69.    California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

70.    Defendants' claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and/or likely to deceive the consuming public within the meaning of California

Business and Professions Code §17200. For example, Defendants engage in the following conduct which is fraudulent and misleading:

        (a)     Defendants' claim that Monster Rehab Green Tea + Energy is "naturally loaded with EGCG," is false and misleading because the EGCG used is not natural; on information and belief, the EGCG present in Monster Rehab Green Tea + Energy is synthetically engineered;

        (b)     Defendants' claims that Monster Rehab Green Tea + Energy "hydrates like a sports drink," and that it will "RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate" are false and misleading because Monster Rehab Green Tea + Energy contains large amounts of caffeine, a diuretic, which is not present in sports drinks and acts to dehydrate not hydrate;

        (c)     Defendants' promotion of the Product "while recovering from a long night" and to "bring you back after a hard day's night," that in the context of a product named and labeled after Rehab Pool Party, encourages and represents the product to be safe and effective for use after a long night of drinking alcohol, when, in fact, the diuretics and liver toxins in Monster Rehab Green Tea + Energy make the Product especially dangerous for use after a long night of drinking alcohol; and

        (d)     The labeling and advertising for Monster Rehab Green Tea + Energy fails to reveal material facts, including, without limitation that EGCG is well-documented in the medical literature to be associated with liver injuries, that

the Product could cause serious adverse side effects, that persons with known liver conditions should not use the Product, that the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be consumed on an empty stomach, that consumers cannot self-identify in advance of taking the Product whether they are likely to be susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice.

71.     California Business and Professions Code §17200 also prohibits any "unfair . . . business act or practice."

72.     Defendants' acts as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq.*, including but not limited to:

(a)     making false and misleading statements;

(b)     making claims without any competent or reliable scientific evidence or substantiation that such claims are truthful and not misleading;

(c)     omitting, suppressing, and concealing material facts in the advertising and labeling for Monster Rehab Green Tea + Energy, including, without limitation that EGCG is well-documented in the medical literature to be associated with liver injuries, that the Product could cause serious adverse side effects, that persons with known liver conditions should not use the Product, that

the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be consumed on an empty stomach, that consumers cannot self-identify in advance of taking the Product whether they are likely to be susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice;

(d)  selling a food or dietary supplement that presents a significant and unreasonable risk of illness or injury when used as labeled, in particular because ordinary consumers cannot know in advance of using the Product whether they are susceptible to injury from the Product; and

(e)  selling a Product that contains untested, dangerous dietary ingredients;

73.  These above acts constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq.* in that the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous, as the gravity of the conduct and potential harm to consumers outweighs any alleged benefits attributable to such conduct.

74.  California Business and Professions Code §17200 also prohibits any "false or misleading advertising." Defendants' misrepresentations and omissions

throughout its advertising and labeling for Monster Rehab Green Tea + Energy is false and misleading.  For example, Defendants engage in the following conduct that constitutes false and misleading labeling and advertising:

(a)     Defendants' claim that Monster Rehab Green Tea + Energy is "naturally loaded with EGCG," is false and misleading because the EGCG used is not natural; on information and belief, the EGCG present in Monster Rehab Green Tea + Energy is  synthetically engineered;

(b)     Defendants' claims that Monster Rehab Green Tea + Energy "hydrates like a sports drink," and that it will "RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate" are false and misleading because Monster Rehab Green Tea + Energy contains large amounts of caffeine, a diuretic, which is not present in sports drinks and acts to dehydrate not hydrate;

(c)     Defendants' promotion of the Product "while recovering from a long night" and to "bring you back after a hard day's night," that in the context of a product named and labeled after Rehab Pool Party, encourages and represents the product to be safe and effective for use after a long night of drinking alcohol, when, in fact, the diuretics and liver toxins in Monster Rehab Green Tea + Energy make the Product especially dangerous for use after a long night of drinking alcohol; and

(d) The labeling and advertising for Monster Rehab Green Tea + Energy fails to reveal material facts, including, without limitation that EGCG is

well-documented in the medical literature to be associated with liver injuries, that the Product could cause serious adverse side effects,  that persons with known liver conditions should not use the Product, that the Product should not be used in conjunction with or shortly after drinking alcohol, that the Product should not be used on a continuous basis, that it should not be consumed on an empty stomach, that consumers cannot self-identify in advance of taking the Product whether they are likely to be susceptible to injury from the Product, or that use of the Product should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice.

75.    Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendants' unlawful, unfair and fraudulent conduct in addition to their fraudulent and misleading advertising.

76.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

77.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

78.    Plaintiff, on behalf of herself individually, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair

competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, including providing notification of Monster Rehab Green Tea + Energy's health risks, and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT III

### Breach of Express Warranty

79.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

80.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Monster Rehab Green Tea + Energy.  The terms of that contract include the promises and affirmations of fact made by Defendants on the Monster Rehab Green Tea + Energy packaging and through their marketing campaign, as described above.  Monster Rehab Green Tea + Energy's packaging and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

81.     As detailed above, Defendants expressly warranted that Monster Rehab Green Tea + Energy:

    (a)     is "Naturally loaded with EGCG,"

    (b)     "hydrates likes a sports drink,"

(c)   will "RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate," and

(d)   that it will help the consumer "recover from a long night," and "bring[s] [them] back after a hard day's night."

82.   The foregoing are a representative, non-exhaustive sample of numerous misrepresentations made by Defendants during the course of their advertising campaign.  At the time of making these and other  warranties with respect to the efficacy and characteristics of Monster Rehab Green Tea + Energy, Defendants knew or should have known that despite the above and other warranties alleged herein, it had breached the terms of this contract, including the express warranties with Plaintiff and the Class by providing Monster Rehab Green Tea + Energy which could not provide the benefits described above.

83.   Plaintiff and the Class purchased Monster Rehab Green Tea + Energy for its ordinary and intended purpose.

84.   Due to Defendants' wrongful conduct as alleged herein, Plaintiff and the Class did not and could not have discovered the nature of the risks and side effects associated with the Monster Rehab Green Tea + Energy or that Monster Rehab Green Tea + Energy was not effective for its advertised benefits and uses until the instigation of this lawsuit.  By virtue of the notice given pursuant to Civil Code § 1782 and this Complaint for Damages, Plaintiff and the Class have in fact

given notice of Defendants' breach within a reasonable time after discovering the breach.

85.     As a direct and proximate result of Defendants' breach of their contract, including the breach of express warranties with respect to Monster Rehab Green Tea + Energy, Plaintiff suffered injuries as set forth above, entitling Plaintiff to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for the Monster Rehab Green Tea + Energy and disgorgement of profits from Defendants received from sales of Monster Rehab Green Tea + Energy, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

86.     All conditions precedent to Defendants' liability under this contract, including notice, have been performed by Plaintiff and the Class.

## COUNT IV

## BREACH OF IMPLIED WARRANTY

87.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

89.     At all times, California has codified and adopted the provisions the

Uniform Commercial Code governing the implied warranty of merchantability: Cal. Comm. Code §2314.

90.  Monster Rehab Green Tea + Energy is a "good," as defined in the California Commercial Code.

91.  As designers, manufacturers, licensors, producers, marketers, and sellers of the Monster Rehab Green Tea + Energy, Defendants are "merchants" within the meaning of the California Commercial Code.

92.  By placing Monster Rehab Green Tea + Energy in the stream of commerce, Defendants impliedly warranted that Monster Rehab Green Tea + Energy is reasonably safe, effective and adequately tested for its intended use, i.e., to be used to rehydrate, revive, rehabilitate, and as a food beverage or dietary supplement, and that it is of merchantable quality.

93.  As merchants of Monster Rehab Green Tea + Energy, Defendants knew that purchasers relied upon them to design, manufacture, license and sell dietary supplements that were reasonably safe and effective, and in fact members of the public, including Plaintiff and the Class, reasonably relied upon the skill and judgment of Defendants and upon said implied warranties in purchasing and consuming Monster Rehab Green Tea + Energy.

94.  Plaintiff and the Class members purchased Monster Rehab Green Tea + Energy for its intended purpose.

95.    In breach of Defendants' implied warranties, Monster Rehab Green Tea + Energy is unsafe, ineffective and not merchantable for ways which include, but are not limited to the fact, that EGCG, an ingredient in Monster Rehab Green Tea + Energy, is a toxic and potentially lethal ingredient that is well-documented in the medical literature to be associated with liver injuries, that Monster Rehab Green Tea + Energy could cause serious adverse side effects,  that persons with known liver conditions should not use the Monster Rehab Green Tea + Energy, that Monster Rehab Green Tea + Energy should not be used in conjunction with or shortly after drinking alcohol, that Monster Rehab Green Tea + Energy should not be used on a continuous basis, that Monster Rehab Green Tea + Energy should not be taken on an empty stomach, that consumers cannot self-identify in advance of taking Monster Rehab Green Tea + Energy whether they are susceptible to injury by taking the Product, that consumption of Monster Rehab Green Tea + Energy should cease and a doctor consulted upon appearance of symptoms of liver problems such as abdominal pain, dark urine or jaundice, and Monster Rehab Green Tea + Energy is not and has not been proven to be effective for its intended uses by competent and reliable scientific evidence.

96.    Monster Rehab Green Tea + Energy was not reasonably safe for its intended use when it left Defendants' control and entered the market.

97.    Monster Rehab Green Tea + Energy's defects were not open or obvious to consumers, including Plaintiff and the Class, who could not have

known about the nature of the risks and side effects associated with Monster Rehab Green Tea + Energy until after they purchased or used it.

98.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and Class members have sustained injuries by purchasing Monster Rehab Green Tea + Energy, which were not safe or effective as represented, thus entitling Plaintiff to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for Monster Rehab Green Tea + Energy and disgorgement of profits from Defendants received from sales of Monster Rehab Green Tea + Energy, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

## COUNT V

### Unjust Enrichment

99.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100.    At all times relevant hereto, Defendants designed, manufactured, licensed, produced, promoted, marketed and/or sold the ineffective, dangerous and improperly labeled Monster Rehab Green Tea + Energy.

101.    Plaintiff and members of the Class conferred upon Defendants non-gratuitous payments for Monster Rehab Green Tea + Energy that was not safe and effective as advertised, and exposed them to serious illnesses, which can be fatal. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff

and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class were not receiving products of the quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

102.   Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

103.   Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     That the Court adjudge and decree that Defendants have engaged in the conduct alleged herein;

C.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

D.   Ordering Defendants to engage in a corrective advertising campaign;

E.   Awarding Plaintiff and the proposed Class members actual damages;

F.   Awarding restitution of property and disgorgement of profits to Plaintiff and the other Class members;

G.   Awarding Plaintiff and the Class punitive damages;

H.   Awarding Plaintiff and the Class treble damages;

I.   Awarding attorneys' fees and costs; and

J.   Providing such further relief as may be just and proper

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  _1/31/2013_____


_____

**ANDREWS & THORNTON**
ANNE ANDREWS (103280)
JOHN C. THORNTON (84492)
SEAN THOMAS HIGGINS (266888)
2 Corporate Park, Suite 110
Irvine, CA 92602
Telephone: 949/748-1000
949/315-3540 (fax)
aa@andrewsthornton.com
jct@andrewsthornton.com
shiggins@andrewsthornton.com

**Exhibit A**

ANDREWS & THORNTON
ANNE ANDREWS (103280)
JOHN C. THORNTON (84492)
SEAN THOMAS HIGGINS (266888)
2 Corporate Park, Suite 110
Irvine, CA 92602
Telephone: 949/748-1000
949/315-3540 (fax)
aa@andrewsthornton.com
jct@andrewsthornton.com
shiggins@andrewsthornton.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WOODING, On Behalf of Herself, All Others Similarly Situated and the General Public, <br><br> Plaintiff, <br><br> v. <br><br> MONSTER ENERGY COMPANY, MONSTER BEVERAGE CORPORATION F/K/A HANSEN NATURAL CORPORATION, and DOES 1-10, <br><br> Defendants. | Case No.: SACV12-2090 DOC (JPRx) <br><br> **DECLARATION OF SEAN T. HIGGINS PURSUANT TO CAL. CIVIL CODE Section 1780** |

DECLARATION OF SEAN T HIGGINS-1

## DECLARATION OF SEAN T. HIGGINS

I, Sean T. Higgins, declare as follows:

1.     I am an associate at Andrews & Thornton and I am licensed to practice law in all courts in the state of California.

2.     I am filing this affidavit on behalf of Plaintiff Jennifer Wooding.

3.     At all times alleged in the accompanying Complaint for Damages, Plaintiff Wooding resided in Orange County, California.

4.     At all times alleged in the accompanying Complaint for Damages, Plaintiff Wooding purchased the products at issue in Orange County, California.

5.     Thus, this action was commenced in this county as a proper place for trial of this action since Plaintiff both resides in Orange County and the transaction at issue occurred in Orange County.

///

///

///

DECLARATION OF SEAN T HIGGINS-2

1  I certify and declare under penalty of perjury under the laws of the State of

2  California that the foregoing is true and correct.

3

4

5

6

7

8

9

10  Dated: 1/31/2013

11

12  Anne Andrews (SBN. 103280)
   John C. Thornton (SBN. 84492)
13  ANDREWS & THORNTON
   2 Corporate Park, Suite 110
14  Irvine, California 92606
   Phone: (949) 748-1000
15  Facsimile: (949) 315-3540

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SEAN T HIGGINS-3

**Exhibit B**

