DAN MARMALEFSKY (BAR NO. 95477)
DMarmalefsky@mofo.com
DAVID F. McDOWELL (BAR NO. 125806)
DMcDowell@mofo.com
PURVI G. PATEL (BAR NO. 270702)
PPatel@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone:  213.892.5200
Facsimile:   213.892.5454

MARC P. MILES (BAR NO. 197741)
MMiles@callahan-law.com
CALLAHAN & BLAINE
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone:  714.241.4444
Facsimile:   714.241.4445

Attorneys for Defendants
MONSTER ENERGY COMPANY
AND MONSTER BEVERAGE
CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WOODING, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>           Plaintiff,<br><br>     v.<br><br>MONSTER ENERGY COMPANY, MONSTER BEVERAGE CORPORATION F/K/A HANSEN NATURAL CORPORATION, and DOES 1-10,<br><br>           Defendants. | Case No. SACV12-2090 DOC (JPRx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 6, 2013<br>Time:  8:30 a.m.<br>Courtroom:  9D<br><br>Hon. David O. Carter |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 6, 2013, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of this Court, located at 411 West Fourth Street, Santa Ana, California, Defendants Monster Energy Company and Monster Beverage Corporation will and hereby do move this Court, pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), for an order dismissing Plaintiff Jennifer Wooding's first amended class action complaint because Plaintiff lacks standing, her claims are preempted or subject to the FDA's primary jurisdiction, she fails to state a claim for relief, and she fails to meet the pleading standard for the purported deliberately deceptive conduct alleged in the complaint.

The motion is based upon this Notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, and the pleadings, files, and records in this action, and upon such additional evidence and arguments as may be presented at the hearing of this motion.

This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on January 4, 2013, and February 28, 2013.


Dated:  March 8, 2013                    MORRISON & FOERSTER LLP


                                         By:  /s/ Dan Marmalefsky
                                              Dan Marmalefsky

                                         *Attorneys for Defendants*
                                         *Monster Energy Company and*
                                         *Monster Beverage Corporation*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   PLAINTIFF'S CONCLUSORY ALLEGATIONS ........................... 2

III.  LEGAL STANDARD ........................................................................ 3

IV.  ARGUMENT ..................................................................................... 4

      A.     Plaintiff's "No-Injury" Complaint Must Be Dismissed........................ 4

      B.     Plaintiff's Claims Are Preempted or Subject to the FDA's Primary Jurisdiction ....................................................................... 7

             1.     There is No Private Right of Action to Enforce FDA Regulations ............................................................................. 7

             2.     The FDCA and NLEA Preempt Plaintiff's "EGCG" Claims ................................................................................... 9

             3.     The FDA Has Primary Jurisdiction Over Matters of Dietary Supplement Labeling and Regulation ........................ 13

             4.     Even If Not Preempted, Plaintiff's Claims Violate the "Dormant Commerce Clause" ................................................ 15

      C.     *Cel-Tech*'s Safe Harbor Bars Plaintiff's UCL and CLRA Claims ..... 15

      D.    Plaintiff's Claims Lack Factual Support and Particularity ................ 16

      E.     Plaintiff Fails to State a UCL OR CLRA Claim................................ 19

             1.     No Standing to Assert UCL or CLRA Claim .......................... 19

             2.     Plaintiff's Affirmative Misrepresentation Claims Involve Non-Actionable Puffery ....................................................... 20

             3.     Plaintiff Has Not Sufficiently Alleged a Duty to Disclose ...... 22

      F.     Plaintiff Fails to State Warranty Claims ........................................... 23

      G.    "Unjust Enrichment" Is Not a Cause of Action................................. 24

      H.    The Court Should Dismiss Plaintiff's CLRA Damage Claim ............ 25

V.   CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ............................................................... 16

*Am. Home Prods. Corp. v. Johnson & Johnson*,
   672 F. Supp. 135 (S.D.N.Y. 1987) ....................................................... 12

*Andrade v. Pangborn Corp.*,
   No. C 02-3771 PVT,
   2004 WL 2480708 (N.D. Cal. Oct. 22, 2004) ..................................... 23

*Annunziato v. eMachines*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................... 21

*Arroyo v. Aurora Bank, FSB*,
   No. EDCV 11-2063-DOC,
   2012 WL 137854 (C.D. Cal. Jan. 18, 2012) ........................................ 24

*Ashcroft v. Iqbal*,
   556 U.S. 662,
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................ 4, 17, 18, 19

*Astiana v. Hain Celestial Grp., Inc.*,
   No. C 11-6342 PJH,
   2012 WL 5873585 (N.D. Cal. Nov. 19, 2012) ...................................... 8

*Baltazar v. Apple, Inc.*,
   No. CV-10-3231-JF,
   2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ..................................... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544,
   127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................... 4, 16

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................. 6

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**CASES (CONT'D)**

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559,
116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) ........................................ 15

*Boysen v. Walgreen Co.*,
No. C 11-06262 SI,
2012 WL 2953069 (N.D. Cal. July 19, 2012) ................................ 6, 19

*Brooks v. Howmedica, Inc.*,
273 F.3d 785 (8th Cir. 2001) ............................................................ 13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341,
121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ........................................ 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163,
83 Cal. Rptr. 2d 548 (1999) ............................................................. 16

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........................................................... 3

*Chavez v. Nestle USA, Inc.*,
No. 09cv9191,
2011 WL 2150128 (C.D. Cal. May 19, 2011) ..................................... 8

*Chavez v. Nestle USA, Inc.*,
No. CV 09-9192-GW,
2011 U.S. Dist. LEXIS 9773 (C.D. Cal. Jan. 10, 2011) ...................... 8

*Consumer Advocates v. Echostar Satellite Corp.*,
113 Cal. App. 4th 1351,
8 Cal. Rptr. 3d 22 (2003) ............................................................. 21, 22

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990) ...................................................... 21, 22

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**CASES (CONT'D)**

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824,
   5 Cal. Rptr. 3d 118 (2006)...............................................................22

*Davis v. Chase Bank U.S.A., N.A.*,
   650 F. Supp. 2d 1073 (C.D. Cal. 2009)............................................25

*Doe v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ..............................................................4

*Dvora v. Gen. Mills, Inc.*,
   No. CV 11-1074, GW (PLAx),
   2011 WL 1897349, at *9 (C.D. Cal. May 16, 2011)..........................23

*Ferruza v. MTI Tech.*,
   No. SACV 00-0745 DOC,
   2002 WL 32344347 (C.D. Cal. June 13, 2002).....................................3

*Henley v. FDA*,
   77 F.3d 616 (2d Cir. 1996) ................................................................13

*Herrington v. Johnson & Johnson Consumer Cos.*,
   No. C 09-1597 CW,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)......................................17

*Hillsborough Cnty., Fla. v. Automated Med. Labs. Inc.*,
   471 U.S. 707,
   105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985) ............................................7

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008).................................................9

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ........................................10, 20

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011)....................................................6

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**CASES (CONT'D)**

*In re Tobacco II Cases,*
46 Cal. 4th 298,
93 Cal. Rptr. 3d 559 (2009)................................................................20

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)...........................................................17

*Krainski v. State ex rel. Bd. of Regents,*
616 F.3d 963 (9th Cir. 2010)...............................................................4

*Law v. Gen. Motors Corp.,*
114 F.3d 909 (9th Cir. 1997)................................................................7

*Lewis v. Casey,*
518 U.S. 343,
116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)...........................................4

*Low v. LinkedIn Corp.,*
No. 11-CV-01468 LHK,
2012 WL 2873847 (N.D. Cal. July 12, 2012)....................................19

*Lujan v. Defenders of Wildlife,*
504 U.S. 555,
112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)...........................................4

*Melchior v. New Line Prods., Inc.,*
106 Cal. App. 4th 779,
131 Cal. Rptr. 2d 347 (2003)..............................................................24

*Meyer v. Sprint Spectrum, L.P.,*
45 Cal. 4th 634,
88 Cal. Rptr. 3d 859 (2009)................................................................20

*Morgan v. Harmonix Music Sys., Inc.,*
No. C08-5211 BZ,
2009 WL 2031765 (N.D. Cal. July 30, 2009).....................................20

# TABLE OF AUTHORITIES
### (Continued)

**Page**

CASES (CONT'D)

*Mut. Pharm. Co. v. Watson Pharm., Inc.*,
   No. CV 09-5700,
   2009 WL 3401117 (C.D. Cal. Oct. 19, 2009) ...................................................... 14

*Myers-Armstrong v. Actavis Totowa, LLC*,
   382 F. App'x 545 (9th Cir. 2010)........................................................................ 24

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm. Inc.*,
   107 Cal. App. 4th 1336,
   133 Cal. Rptr. 2d 207 (2003)................................................................................ 8

*Newcal Indus., Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................................ 21

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) ................................................................................ 6

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008)................................................................ 22

*Overton v. Bird Brain, Inc.*,
   No. SACV 11-1054 ............................................................................................. 25

*Overton v. CVS Caremark Corp.*,
   No. SACV 12-0982 DOC,
   2012 U.S. Dist. LEXIS 185697 (C.D. Cal. Dec. 11, 2012) ............................... 10

*Perez v. Nidek Co.*,
   657 F. Supp. 2d 1156 (S.D. Cal. 2009) ................................................................ 9

*Peviani v. Hostess Brands, Inc.*,
   750 F. Supp. 2d 1111 (C.D. Cal. 2010)........................................................ 10, 12

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137,
   90 S. Ct. 844, 25 L. Ed. 2d 174 (1970) .............................................................. 15

*POM Wonderful LLC v. Coca-Cola Co.*,
   679 F.3d 1170 (9th Cir. 2012)............................................................... 7, 8, 9, 16

# TABLE OF AUTHORITIES
## (Continued)

**Page**

**CASES (CONT'D)**

*Ries v. Hornell Brewing Co.*,
   No. 10cv01139,
   2010 WL 2943860 (N.D. Cal. July 23, 2010) ..................................................... 14

*Rivera v. Wyeth-Ayerst Laboratories*,
   283 F.3d 315 (5th Cir. 2002) .......................................................................... 5, 6

*Rosen v. Unilever U.S., Inc.*,
   No. C 09-02563 JW,
   2010 WL 4807100 (N.D. Cal. May 3, 2010) ..................................................... 18

*Rutherford v. FIA Card Servs., N.A.*,
   No. CV 11-04433 DDP,
   2012 WL 5830081 (C.D. Cal. Nov. 16, 2012) ................................................... 24

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ........................................................................... 4

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ........................................................................... 20

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ......................................................................... 21

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ..................................................... 24

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
   646 F. Supp. 2d 510 (S.D.N.Y. 2009) .............................................................. 22

*Suzuki v. Hitachi Global Storage Techs., Inc.*,
   No. C06-07289,
   2007 WL 2070263 (N.D. Cal. July 17, 2007) ................................................... 16

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
   307 F.3d 775 (9th Cir. 2002) ....................................................................... 13, 14

1

2

<b><u>TABLE OF AUTHORITIES</u></b><br>(Continued)

<b><u>Page</u></b>

3

**CASES (CONT'D)**

4

5

6

*Tait v. BSH Home Appliances Corp.,*
   No. SACV 1000711 DOC,
   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ..................................................... 21

7

8

*Turek v. Gen. Mills, Inc.,*
   662 F.3d 423 (7th Cir. 2011) ......................................................................... 9, 15

9

*United States v. Gen. Dynamics Corp.,*
   828 F.2d 1356 (9th Cir. 1987) .......................................................................... 13

10

11

*Williams v. Purdue Pharma Co.,*
   297 F. Supp. 2d 171 (D.D.C. 2003) ................................................................... 6

12

13

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012) .......................................................................... 23

14

**STATUTES, RULE & REGULATIONS**

15

16

21 U.S.C.
   § 301 *et seq.* .......................................................................................................... 7

17

   § 321(ff) ................................................................................................................. 9
   § 331(b) .................................................................................................................. 7

18

   § 337(a) .................................................................................................................. 7

19

   § 343 ...................................................................................................................... 7
   § 343-1 ........................................................................................................... 10, 13

20

   § 343-1(a)(4) ............................................................................................. 10, 11, 13

21

   § 343-1(b) ............................................................................................................. 10
   § 343(q)(5)(F) ....................................................................................................... 11

22

   § 343(q)(5)(F)(i)(ii) .............................................................................................. 11

23

   § 343(q)(5)(F)(i)(ii) .............................................................................................. 16
   § 343(q)(5)(F)(iii) ................................................................................................. 12

24

   § 343(s) ........................................................................................................... 11, 16

25

   § 393(b)(2)(A) ...................................................................................................... 14

26

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

**STATUTES, RULE & REGULATIONS (CONT'D)**

21 C.F.R.
    § 10.25(b) ................................................................................. 14
    § 100.1 ....................................................................................... 13
    § 100.1(c)(4) ........................................................................ 10, 13
    § 101.17 ..................................................................................... 12

Bus. & Prof. Code
    § 17200 *et seq.* .................................................................... passim

Cal. Civ. Code
    § 1750 *et seq.* ..................................................................... passim
    § 1782(a) ................................................................................... 25

Cal. Com. Code
    § 2314 ................................................................................. 23, 24

Fed. R. Civ. P.
    Rule 8 ................................................................................. 16, 20
    Rule 8(a)(2) ................................................................................. 4
    Rule 9(b) ................................................................................... 17
    Rule 11 ......................................................................................
    Rule 12(b)(1) .............................................................................. 3
    Rule 12(b)(6) .............................................................................. 4

**OTHER AUTHORITIES**

Armstrong, *Caffeine, Fluid-Electrolyte Balance, Temp. Reg. and Exercise-Heat Tolerance*, 35 Exerc. Sport Sci. Rev. 135 (2007) ................................... 18

FDA, *Compliance Policy Guide Sec. 510.800 Beverages — Serving Size Labeling* (Dec. 2010) at 4, *available at* www.fda.gov/downloads/ICECI/.../UCM238854.doc ...................................... 22

FDA, *Energy Drinks and Supplements: Investigations of Adverse Event Report* (Nov. 16, 2012) ................................................................. 14

FTC, *Dietary Supplements: An Advertising Guide for Industry* (April 2001) ............................................... 14

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2                                                                                              <u>Page</u>

3   Letter from Jon Leibowitz, FTC Chairman, to Hon. Edward Markey, U.S.

4        House of Representatives (Jan. 2, 2013) ............................................................ 14

5   Letter from Michele Mital, FDA Acting Associate Commissioner for

6        Legislation, to Hon. Richard Durbin, U.S. Senate (Nov. 21, 2012) ................. 14

7   USDA Agricultural Research Service, USDA Database for the Flavonoid

8        Content of Selected Foods 86 (2007) ........................................................... 11, 12

9   5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,

         § 27:38 (4th ed.) .................................................................................................... 21

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

In this "no-injury" putative class action, Plaintiff seeks a refund for the cost of four cans of Monster Rehab Green Tea + Energy ("Rehab Green Tea") she allegedly purchased and consumed without incident last summer.  Although Plaintiff alleges that Rehab Green Tea poses potential health risks and is ineffective, she does not allege that she suffered any injury from drinking Rehab Green Tea or that Rehab Green Tea did not fulfill its intended purpose.  Plaintiff's claims fall into two general theories of harm.  Neither has merit.

Plaintiff principally complains that Rehab Green Tea is unsafe because it contains EGCG (an antioxidant naturally present in green tea).[1]  To support this allegation, Plaintiff relies on studies of unrelated products made by other companies.  She makes no specific allegations of harm to anyone, much less herself, caused either by EGCG in general or by Rehab Green Tea in particular.

Plaintiff also contends the Rehab Green Tea label is misleading because it states Rehab Green Tea (1) is "naturally loaded" with EGCG (which Plaintiff claims contradicts her conclusory assertion that EGCG is not healthy because it is "synthetic"); and (2) "hydrates like a sports drink" and "re-fresh[es], re-hydrate[s], re-vive[s], or . . . re-habilitate[s]" (because the presence of caffeine purportedly renders it ineffective).  Aside from conclusory allegations, Plaintiff provides no support for the made-up notion that the EGCG in Rehab Green Tea is synthetic, that the amount of caffeine in Rehab Green Tea dehydrates, that she purchased Rehab Green Tea based on any of the alleged representations, or that Rehab Green Tea did not, in fact, hydrate her.

There is no nexus between the statements Plaintiff complains of and any injury.  Her amended complaint, like her original complaint, is devoid of factual support, and must be dismissed.  Even if her allegations had been sufficiently

---

[1] "EGCG" stands for "epigallocatechin-3-gallate."

developed, her claims would still fail.  The conduct Plaintiff complains about —

safety and efficacy of a dietary supplement — falls squarely within the jurisdiction

of the United States Food and Drug Administration.  As such, all of her claims are

preempted.  In addition, each of her five causes of action fails for independent

reasons, leaving Plaintiff without a single viable cause of action.[2]

## II.    PLAINTIFF'S CONCLUSORY ALLEGATIONS

Plaintiff brings this putative class action on behalf of herself and a

nationwide class of buyers of Rehab Green Tea.  (FAC ¶ 47.)  The crux of her

grievance is that she bought four cans of Rehab Green Tea believing it was safe and

effective for its advertised use.  (*Id.* ¶ 12.)  Plaintiff, however, alleges no harm to

her health or that Rehab Green Tea failed to hydrate her.

Plaintiff claims that the Rehab Green Tea label fails to warn consumers of

the alleged dangers of EGCG.[3]  (*Id.* ¶¶ 4-5.)  She bases these allegations on two

sources: (1) "numerous [unidentified] studies" and recalls of two unrelated products

(Exolise and Hydroxycut)[4] that allegedly contain some amount of EGCG (though

Plaintiff does not allege that they contain amounts of EGCG comparable to that

found in Rehab Green Tea) (FAC ¶¶ 23-31) and (2) her "belief" that EGCG is

"synthetic" (*id.* ¶ 36).  Plaintiff does not make any allegations regarding the EGCG

---

[2] Plaintiff asserts five causes of action: (1) violation of the Consumers Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA"); (2) violation of the unfair competition law, Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (3) breach of express warranty; (4) breach of implied warranty; and (5) unjust enrichment.

[3] A complete and legible copy of the Rehab Green Tea label at issue is attached as Exhibit A to the RJN.

[4] Plaintiff misleadingly suggests that the adverse event reports of liver injury resulting from Hydroxycut use were due to the presence of EGCG in Hydroxycut. The FDA study that she cites, however, does not mention EGCG and states "the FDA does not know which ingredient(s) of Hydroxycut formulations are responsible for producing liver toxicity."  (Letter from Stephen F. Sundlof, Director, Center for Food Safety and Applied Nutrition, to Terry Begley, Iovate Health Sciences, Inc. (Apr. 30, 2009), RJN, Ex. B.)

*in* Rehab Green Tea, or the basis for her "belief" that EGCG is synthetic.[5]

Plaintiff makes a related conclusory allegation that the statement that Rehab Green Tea is "naturally loaded" with EGCG misleads consumers into believing it is healthy.  (*Id*. ¶ 36.)  Plaintiff does not allege she purchased Rehab Green Tea based on that statement.  Regardless, a "puffing" statement that Rehab Green Tea is "loaded" with EGCG cannot reasonably be construed as a safety or health claim.

Her allegations that Rehab Green Tea does not "hydrate[] like a sports drink" or refresh, rehydrate, revive, or rehabilitate are similarly unsupported.  (*Id*. ¶ 35.)  Again, Plaintiff does not allege that she relied on these statements in purchasing Rehab Green Tea or that she had such expectations.  Nor does she allege that the Rehab Green Tea she drank did not perform as intended.  She nonetheless claims that Rehab Green Tea cannot possibly hydrate because it contains caffeine.  (*Id*.)  Aside from conclusory allegations about generalized diuretic effects of caffeine, Plaintiff alleges no facts to support this assertion, let alone any facts based on her own experience drinking Rehab Green Tea.

## III.   LEGAL STANDARD

On a motion to dismiss for lack of standing under Rule 12(b)(1), a court must dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing requirements.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

---

[5] Defendants expected Plaintiff's amended complaint would include specific factual allegations regarding the EGCG in Rehab Green Tea.  The amended complaint is materially identical, however, to the original complaint, except that Plaintiff has removed allegations inconsistently alleging that Rehab Green Tea contains either too much or too little EGCG.  (*See* Compl. ¶ 34.)  The amended complaint is silent as to the amount of EGCG Plaintiff believes is present, and her continued inability to provide factual support for her allegations raises Rule 11 concerns.  *Ferruza v. MTI Tech.*, No. SACV 00-0745 DOC, 2002 WL 32344347, at *5 (C.D. Cal. June 13, 2002) (Carter, J.) ("Rule 11 serves to keep a plaintiff's allegations . . . in check.").

1       A court must also dismiss a complaint under Rule 12(b)(6) where a plaintiff

2   fails to set forth "enough facts to state a claim to relief that is plausible on its face."

3   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

4   (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

5   (2009).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient

6   factual matter to state a facially plausible claim to relief."  *Krainski v. State ex rel.*

7   *Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677);

8   Fed. R. Civ. P. 8(a)(2).  Although a court must accept factual allegations as true,

9   "conclusory allegations of law and unwarranted inferences are insufficient to defeat

10  a motion to dismiss."  *Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir.

11  2009) (citing *Iqbal*, 556 U.S. at 678).

12  **IV.   ARGUMENT**

13      **A.   Plaintiff's "No-Injury" Complaint Must Be Dismissed**

14      To have Article III standing, Plaintiff must plead (1) an "injury in fact,"

15  (2) causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

16  560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  "Injury in fact" requires

17  damage to "a legally protected interest which is (a) concrete and particularized, and

18  (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560

19  (internal citations and quotations omitted); *Salmon Spawning & Recovery Alliance*

20  *v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008).  In a putative class action, the

21  plaintiff must establish that she personally has standing, or she may not seek relief

22  on behalf of the class.  *See Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174,

23  135 L. Ed. 2d 606 (1996).

24      At its core, this lawsuit concerns claims that Rehab Green Tea is unsafe (due

25  to the allegedly toxic effects of the EGCG naturally present in green tea) and

26  ineffective (due to the presence of caffeine, which purportedly prevents Rehab

27  Green Tea from hydrating).  Plaintiff, however, does not allege that she actually

28  incurred any harm from drinking Rehab Green Tea.  Nor does she allege that Rehab

Green Tea did not work as intended, *i.e.*, that it did not hydrate her.  Plaintiff instead attempts to manufacture an injury by alleging, in conclusory fashion, that she suffered an economic injury in the amount of the "purchase price for products that are of little or no value and are dangerous."  (FAC ¶ 12.)  Such conclusory allegations of economic injury are insufficient to confer standing in this "no-injury" products liability case masquerading as a false advertising class action.

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), is instructive.  In *Rivera*, a putative class of purchasers of Duract, an anti-inflammatory drug, brought a nationwide class action on behalf of patients who were prescribed or had ingested Duract.  Plaintiffs asserted claims under the Texas Deceptive Trade Practices Act, and for breach of the implied warranty of merchantability and unjust enrichment, as a result of Wyeth's purported failure to warn of Duract's alleged harm to one's liver.  *Rivera*, 283 F.3d at 316-17.  Remarkably analogous to Plaintiff's allegations here, the Fifth Circuit characterized the claim as follows:  "Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back."  *Id*. at 319.  The *Rivera* court held, however, that "[m]erely asking for money does not establish an injury in fact" (*id.*) and dismissed the complaint for lack of standing:

> The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law.  The wrongs they allege—failure to warn and sale of a defective product—are products liability claims.  Yet, the damages they assert—*benefit of the bargain*, out of pocket expenditures—are contract law damages.  The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury.  Such artful pleading, however, is not enough to create an injury in fact.

5

1    *Id.* at 320-21 (emphasis added; citation omitted).[6]

2        Other district courts confronted with the same issue agree with *Rivera*.  For

3    example, in *In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d

4    507 (D. Mass. 2011), and *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL

5    2953069 (N.D. Cal. July 19, 2012), consumers complained that fruit juice labeled

6    "100% juice" was misleading because the juice contained trace levels of arsenic

7    and lead.  The plaintiffs in both cases alleged the same economic injury that

8    Plaintiff alleges here.  Both courts dismissed the actions for lack of standing:

9            Plaintiffs paid for fruit juice, and they received fruit juice, which

10           they consumed without suffering harm.  The products . . . do not

11           fail to comply with any federal standards.  The products had no

12           diminished value due to the presence of the lead.  Thus, Plaintiffs

13           received the benefit of the bargain, as a matter of law, when they

14           purchased these products.

15   *Boysen*, 2012 WL 2953069, at *4 (quoting *In re Fruit Juice.*, 831 F. Supp. 2d at

16   512).

17       Here, Plaintiff's "injury" allegations are similar to those in *Boysen*, but more

18   attenuated than in *Rivera*.  With respect to her EGCG-safety allegations, Plaintiff at

19   most suggests that EGCG in *unrelated* products (Exolise and Hydroxycut) and in

20   *unspecified* amounts caused liver injury.  (*See* FAC ¶¶ 23-31.)  Although Plaintiff

21   tries to blur the lines between Rehab Green Tea (the product at issue) and EGCG in

22   general, Plaintiff does not allege that anyone — including Plaintiff herself —

23   complained that *Rehab Green Tea* caused any harm or did not hydrate.  (*See id.*

24

25           [6] *See, e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ("the
     alleged loss in value does not constitute a distinct and palpable injury"); *O'Neil v.*
26   *Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) (affirming dismissal of no-injury false
     advertising and warranty claims); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d
27   171, 176-78 (D.D.C. 2003) (dismissing claims where plaintiffs sought refund for
     pain relievers but failed to allege they experienced the "wrongs" alleged).

28

¶ 12.)  Plaintiff drank Rehab Green Tea without incident, and aside from conclusory allegations regarding the effect of caffeine in Rehab Green Tea, she does not allege that Rehab Green Tea was unfit for its intended purpose.  Plaintiff alleges no cognizable injury, and her claims should be dismissed.

### B.   Plaintiff's Claims Are Preempted or Subject to the FDA's Primary Jurisdiction

"The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules."  *Law v. Gen. Motors Corp.*, 114 F.3d 909, 909 (9th Cir. 1997) (citing U.S. Const. art. VI, cl. 2).  Federal law may preempt state law under express preemption, field preemption, or implied conflict preemption.  *E.g.*, *Hillsborough Cnty., Fla. v. Automated Med. Labs. Inc.*, 471 U.S. 707, 713, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985).  Here, the FDCA (21 U.S.C. §§ 301-399), the NLEA (21 U.S.C. § 343), and their implementing regulations detail the federal provisions prohibiting "misbranding" of food (21 U.S.C. § 331(b)) and grant the FDA *exclusive* authority to ensure that "foods are . . . properly labeled" on behalf of all consumers (*id.* § 393(b)(2)(A)).

### 1.   There Is No Private Right of Action to Enforce FDA Regulations

Private litigants are prohibited from suing to enforce compliance with the FDCA and NLEA.  21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."); *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001); *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1175 (9th Cir. 2012), *petition for cert. filed*, __ U.S.L.W. __ (U.S. Dec. 21, 2012) (No. 12-761) (recognizing the FDCA "comprehensively regulates food and beverage labeling").

In *POM Wonderful LLC v. Coca-Cola Co.*, the Ninth Circuit foreclosed lawsuits that indirectly brought claims to enforce alleged FDA labeling violations,

on the grounds that "allowing such . . . suit[s] would undermine Congress's decision to limit enforcement of the FDCA to the federal government." *POM Wonderful*, 679 F.3d at 1175-76.  Although *POM Wonderful* involved a Lanham Act claim, its analysis has been applied by district courts in the Ninth Circuit to dismiss UCL and CLRA claims — including on remand by the district court in the very same case.  *POM Wonderful*, No. 2:08-cv-06237-SJO-FMO, 2013 WL 543361, at *4 & n.1 (C.D. Cal. Feb. 13, 2013) (dismissing UCL and CLRA food mislabeling claims as preempted by FDCA).[7]

Here, Plaintiff seeks to use state law to do precisely what *POM Wonderful* prohibits.  Each of Plaintiff's claims touches on purported insufficiencies in Rehab Green Tea labeling, as well as its safety and efficacy.  (*See, e.g.*, FAC ¶¶ 3, 4, 10, 57, 66, 80, 95, 101.)  These claims piggyback on alleged violations of the FDCA. She alleges, for example, that a common legal and factual question in the case includes "whether Defendants had adequate substantiation for their claims prior to making them, including without limitation that [Rehab Green Tea] provides rehydration . . . , is naturally loaded with EGCG . . . , revives."  (FAC ¶ 49(a); *see also* ¶¶ 66(b), 67.)[8]  Plaintiff's additional allegations that ingredients in Rehab Green Tea could cause liver damage, dehydration, and have other "contraindications" confirm Plaintiff is improperly attempting to circumvent the

---

[7] *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5873585, at *2 (N.D. Cal. Nov. 19, 2012) ("If the FDA believes that more should be done to prevent deception, or that [the] label misleads customers, it can act."); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192-GW (CWx), 2011 U.S. Dist. LEXIS 9773, at *24-25 (C.D. Cal. Jan. 10, 2011), *appeal docketed*, No. 11-56066 (9th Cir. June 23, 2011) ("[T]o the extent that any of Plaintiff's allegations . . . are based on . . . product labeling, they would be preempted by federal law[.]").

[8] There is no private right of action for unsubstantiated label (or advertising) claims; only the government has standing.  *See Chavez v. Nestle USA, Inc.*, No. 09cv9191, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm. Inc.*, 107 Cal. App. 4th 1336, 1342, 133 Cal. Rptr. 2d 207 (2003).

1    FDCA's bar on private rights of action under the guise of state law.  (*Id.* ¶¶ 31, 36,

2    41, 44, 45, 49(b).)[9]

3         **2.    The FDCA and NLEA Preempt Plaintiff's "EGCG" Claims**

4         Through the FDCA and NLEA, Congress created a comprehensive scheme

5    for the regulation and oversight of food products, including the uniform labeling of

6    such products.  The FDCA defines dietary supplements as "food," bringing the

7    Rehab Green Tea at issue within the scope of the regulatory scheme.  *See* 21 U.S.C.

8    § 321(ff) ("[A] dietary supplement shall be deemed to be a food within the meaning

9    of this [Act].").  Rehab Green Tea is clearly within the FDA's purview.  (*See* FAC

10   ¶ 13 (alleging Rehab Green Tea is a dietary supplement).)

11        The NLEA, which amended the FDCA, was intended to "clarify and to

12   strengthen [the FDA's] legal authority to require nutrition labeling on foods."  H.R.

13   Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.  These

14   statutes ensure that uniform requirements will not devolve into a state-by-state

15   patchwork of labeling schemes that would impede federal objectives.  *See, e.g.*,

16   *POM Wonderful*, 679 F.3d at 1178 (Congress "entrust[ed] matters of . . . beverage

17   labeling to the FDA"); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)

18   ("Congress would not want to allow states to impose disclosure requirements of

19   their own on packaged food products, most of which are sold nationwide.").

20        **a.    The express preemption provisions**

21        To ensure uniform labeling, NLEA contains an express preemption clause,

22

23   _____

24        [9] Defendants expect Plaintiff will say the Sherman Law offers a detour
     around the private enforcement bar.  (FAC ¶¶ 40, 67.)  Like the plaintiff in *POM
25   Wonderful* (*cf.* 679 F.3d at 1174), Plaintiff cannot use the Sherman Law to enforce
     FDA regulations.  *See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices
26   Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (plaintiffs may not use other
     laws as a means to assert a private cause of action based on violations of the
27   FDCA); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) ("The
     Court will not permit Plaintiffs to privately enforce the FDCA and its regulations
28   under the guise of state law claims.").

providing that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" any "requirement for nutrition labeling of food that is not identical to the requirement of [21 U.S.C.] section 343(q)." 21 U.S.C. § 343-1(a)(4). In turn, a "not identical" requirement is any

> State requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation].

21 C.F.R. § 100.1(c)(4).[10]

Under this standard, state consumer protection laws like the UCL and CLRA are "preempted if they seek to impose requirements that contravene the requirements set forth by federal law." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1113 (S.D. Cal. 2011) (citing *Wyeth v. Levine*, 555 U.S. 555, 575, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009)) (interpreting 21 C.F.R. § 100.1(c)(4)); *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) (state law claims fail where they "impose a state-law obligation . . . not required by federal law"); *Overton v. CVS Caremark Corp.*, No. SACV 12-0982 DOC, 2012 U.S. Dist. LEXIS 185697, at *10-12 (C.D. Cal. Dec. 11, 2012) (explaining preemptive effect of § 343-1 and dismissing mislabeling case on express preemption grounds).

---

[10] The FDA's preemption provision is particularly strong; preemption can only be avoided if a state expressly requests waiver, and even then only if certain conditions are satisfied. *See* 21 U.S.C. § 343-1(b).

### b.   Plaintiff's claims would impose an "EGCG" labeling requirement "not identical to" FDCA requirements

Section 343-1(a)(4) preempts state labeling requirements that are not identical to the requirements under section 343(q), which governs nutrition information labels, including labels for dietary supplements.  *See* 21 U.S.C. § 343(q)(5)(F).  In relevant part, section 343(q) provides that

> (i) nutrition information shall first list those dietary ingredients that are present in the product in a significant amount for which a recommendation for daily consumption has been established by the Secretary, except that a dietary ingredient shall not be required to be listed if it is not present in a significant amount, and shall list any other dietary ingredient present and identified as having no such recommendation;
>
> (ii) the listing of dietary ingredients shall include the quantity of each such ingredient (or of a proprietary blend of such ingredients) per serving[.]

21 U.S.C. § 343(q)(5)(F)(i)(ii).  Under the FDCA, therefore, if an ingredient in a dietary supplement is a part of a proprietary blend, the manufacturer is not required to specify the quantity of the ingredient on the supplement's label.

Plaintiff demands that Defendants disclose the quantity of EGCG in the green tea that is a part of Defendants' proprietary "Rehab Energy Blend."  (*See* FAC ¶ 37.)  Consistent with the FDCA, Defendants do disclose (as Plaintiff acknowledges) the total quantity (3200 mg) of ingredients in its Rehab Energy Blend (FAC ¶ 37).  21 U.S.C. § 343(s) (dietary supplement is misbranded if it does not disclose the *total* quantity of all ingredients in a proprietary blend).  In any event, EGCG is just one of many ingredients naturally occurring in green tea.[11]

---

[11] *See, e.g.*, USDA Agricultural Research Service, USDA Database for the Flavonoid Content of Selected Foods 86 (2007) (listing ingredients in green tea,

(Footnote continues on next page.)

Plaintiff cannot point to any statute or regulation that requires any company that markets green tea products to list each of hundreds of individual constituents found in green tea on an ingredient label.

Plaintiff also alleges the statement that Rehab Green Tea is "naturally loaded" with EGCG is misleading because the EGCG used in Rehab Green Tea is synthetic.  (*See, e.g.*, FAC ¶ 36.)  The FDCA expressly permits Defendants to include the source of a dietary ingredient (here, "natural") and preempts any claim that would interfere with Defendants' ability to do so.  *See* 21 U.S.C. § 343(q)(5)(F)(iii).  EGCG is a naturally-occurring component of green tea, and Plaintiff's conclusory "information and belief" allegation that the EGCG in Rehab Green Tea is synthetic is insufficient to challenge Defendants' FDA-compliant label.[12]

Plaintiff additionally complains that Defendants fail to include sufficient warnings on the Rehab Green Tea.  (*See, e.g.*, FAC ¶ 31.)  Where the FDA has determined warnings are appropriate for food products, it has enacted regulations.  *See* 21 C.F.R. § 101.17 ("Food labeling warning, notice, and safe handling statements").  Plaintiffs' litany of *additional* "missing" warnings (none of which the FDA requires) necessarily would impose state law obligations that add to, and thus are preempted by, federal regulations.  *See Peviani*, 750 F. Supp. 2d at 1119; *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987) ("In unfair competition actions under state . . . law, . . . compliance with FDA warning requirements is a complete defense.").  Plaintiff's spare allegations

---

(Footnote continued from previous page.)

including, *inter alia*, catechin, gallaogatechin, epicatechin, epigallocatechin (EGC), epicatechin gallate (ECG), epigallocatechin-3-gallate (EGCG), theaflavin, thearubigins, apigenin, luteolin, kaempferol, myricetin, and quercetin).

[12] *See* USDA Agricultural Research Service, *supra* note 11, at 86.  Tellingly, Plaintiff does not substantiate her conclusory and unfounded statement that EGCG is synthetic with a simple, inexpensive laboratory test result.

1   notwithstanding, the FDA, not private litigants, sets the requirements for labeling

2   Rehab Green Tea.  Any nutrition labeling requirement Plaintiff seeks to impose

3   through this lawsuit that is contrary to or in addition to federal requirements is

4   preempted.  21 U.S.C. § 343-1(a)(4), 21 C.F.R. § 100.1(c)(4).

### 3.  The FDA Has Primary Jurisdiction over Matters of Dietary Supplement Labeling and Regulation

7        Even if Plaintiff's claims were not preempted, the FDA has primary

8   jurisdiction to regulate labeling.  The primary jurisdiction doctrine applies when

9   "protection of the integrity of a regulatory scheme dictates preliminary resort to the

10  agency which administers the scheme."  *United States v. Gen. Dynamics Corp.*, 828

11  F.2d 1356, 1362 (9th Cir. 1987).  Here, the FDA is the agency with the specialized

12  expertise to determine whether Rehab Green Tea is correctly labeled.  *See, e.g.*, 21

13  U.S.C. § 343-1 (expressly preempting food labeling "requirements" in favor of

14  FDA regulations); 21 C.F.R. § 100.1 (providing limited circumstances in which

15  states may petition FDA to provide alternative food labeling requirements).[13]

16       The Court considers the following factors in exercising its discretion to apply

17  the primary jurisdiction doctrine:  "(1) the need to resolve an issue that (2) has been

18  placed by Congress within the jurisdiction of an administrative body having

19  regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

20  comprehensive regulatory authority that (4) requires expertise or uniformity in

21  administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775,

22  781 (9th Cir. 2002).

23       Each of these factors supports application of the doctrine here.  Pursuant to

24  the FDCA, Congress has vested the FDA with jurisdiction over issues involving

---

[13] *See also Henley v. FDA*, 77 F.3d 616, 620 (2d Cir. 1996) ("determination of what labeling best reflects current scientific information regarding the risks and benefits" requires FDA expertise); *Brooks v. Howmedica, Inc.*, 273 F.3d 785, 796 (8th Cir. 2001) (noting FDA's expertise extends to warnings that should be given).

safety and labeling of dietary supplements.  *See* 21 U.S.C. § 393(b)(2)(A) (FDA's "mission" includes protecting public health by ensuring foods are safe and properly labeled); 21 C.F.R. § 10.25(b) ("FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate").[14]

Moreover, the FDA is currently investigating various issues potentially related to energy drinks.  Given its expertise, the FDA is uniquely situated to consider claims regarding whether Rehab Green Tea is safe.  (*See, e.g.*, FDA, *Energy Drinks and Supplements: Investigations of Adverse Event Report* (Nov. 16, 2012), RJN, Ex. C) (FDA "must carefully investigate and evaluate other possible causes before deciding whether the product actually caused the medical problem.").  Indeed, both Congress and the FDA are currently investigating the safety of energy drinks.[15]

Plaintiff's lawsuit seeks to interfere with the primary jurisdiction of the FDA and attempts to have this Court stand in the FDA's shoes to regulate the ingredients and labeling for Rehab Green Tea.  The Court should instead defer to the FDA, which has exclusive jurisdiction over dietary supplement safety and primary jurisdiction over dietary supplement labeling.  *See, e.g.*, *Ries v. Hornell Brewing Co.*, No. 10cv01139, 2010 WL 2943860 (N.D. Cal. July 23, 2010) (referring question regarding "natural" ingredients to FDA); *Mut. Pharm. Co. v. Watson Pharm., Inc.*, No. CV 09-5700, 2009 WL 3401117, at *15 (C.D. Cal. Oct. 19, 2009)

---

[14] Likewise, the Federal Trade Commission has primary jurisdiction over dietary supplement advertising. (*See, e.g.*, FTC, *Dietary Supplements: An Advertising Guide for Industry* (April 2001), RJN, Ex. D; Letter from Jon Leibowitz, FTC Chairman, to Hon. Edward Markey, U.S. House of Representatives (Jan. 2, 2013), RJN, Ex. E.)  Plaintiff's allegations are primarily focused on labeling for the Rehab Green Tea, though Plaintiff does make broad, overarching references to Defendants' marketing and advertising. (*See, e.g.*, FAC ¶¶ 4, 10.)  As with claims regarding safety and labeling of Rehab Green Tea, the Court should defer to the FTC's expertise in regulating advertising.  *Syntek*, 307 F.3d at 781.

[15] (*See, e.g.*, Letter from Michele Mital, FDA Acting Associate Commissioner for Legislation, to Hon. Richard Durbin, U.S. Senate (Nov. 21, 2012), RJN, Ex. F.)  The FTC has also been called upon to exercise its jurisdiction to investigate energy drink advertising.  (RJN, Ex. E.)

("[D]isputes concerning the content of [the product's] labels and inserts fall[] even more squarely within the primary jurisdiction of the FDA.").

### 4.    Even if Not Preempted, Plaintiff's Claims Violate the "Dormant Commerce Clause"

Plaintiff's lawsuit would create disparate product labeling rules for Rehab Green Tea (and any other food in which EGCG is naturally found) with one set of rules dictated by California consumer protection law, another dictated by federal law, and potentially 49 other sets of rules based on other states' laws — an invitation to create a patchwork of state regulations that will burden Defendants and interstate commerce in violation of the Dormant Commerce Clause.  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970) (holding law with "incidental" effects on interstate commerce was unconstitutional because the burden was still "clearly excessive in relation to the putative local benefits").[16]  *Cf. Turek*, 662 F.3d at 426 (inconsistent state regulations would require manufacturers "to print 50 different labels, driving consumers who buy food products in more than one state crazy").  Such a result would run afoul of NLEA's express purpose to establish a national uniform labeling standard to avoid a patchwork of state labeling regulations.[17]

### C.    *Cel-Tech*'s Safe Harbor Bars Plaintiff's UCL and CLRA Claims

Plaintiff's UCL and CLRA claims must be dismissed because neither statute authorizes a claim for relief when specific legislation provides a "safe harbor" for

---

[16] In *Pike*, the Supreme Court overturned an Arizona law requiring locally grown fruit to be packed in a certain way, requiring the grower to build a $200,000 facility.  397 U.S. at 145-46 ("Such an incidental consequence of a regulatory scheme could perhaps be tolerated if a more compelling state interest were involved," but the state interest was "tenuous" and "minimal at best.").

[17] If Plaintiff seeks to export her own labeling requirements nationwide (by seeking relief for a nationwide class), no known authority supports such extraterritoriality.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) ("[W]hile we do not doubt that Congress has ample authority to enact . . . a policy for the entire Nation, it is clear that no single State could do so, or even impose its own policy choice on neighboring States.").

the conduct at issue.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20
Cal. 4th 163, 180, 182, 83 Cal. Rptr. 2d 548 (1999) ("When specific legislation
provides a 'safe harbor,' plaintiffs may not use the general unfair competition law
to assault that harbor.").  If the legislature has clearly permitted certain conduct,
courts may not override that determination.  *See id.* at 182-83.  Thus, when a claim
for violation of the UCL or CLRA is based on conduct expressly permitted by
another law, the claim is barred.  *See, e.g., Alvarez v. Chevron Corp.*, 656 F.3d 925,
931 (9th Cir. 2011) (affirming dismissal of UCL and CLRA claims because
conduct was "clearly permitted" by California law).

As discussed above, Defendants have labeled Rehab Green Tea in a manner
that is "clearly permitted" by the FDCA.  Under federal law, Defendants are
allowed to state the total amount of their proprietary blend, without disclosing the
amount of each component.  Here, Plaintiff seeks disclosure of the amount of
EGCG, which is one of many components of green tea, which itself is a component
of the proprietary blend.  *See* 21 U.S.C. §§ 343(q)(5)(F)(i)(ii) & (s).  The applicable
regulatory scheme therefore provides a safe harbor for the conduct Plaintiff alleges
violates the UCL and CLRA.  *See, e.g.*, *POM Wonderful*, 2013 WL 543361, at *5
(California's safe harbor doctrine provides a "separate and independent basis" for
dismissal because defendant "complied with the relevant FDA regulations"); *Suzuki
v. Hitachi Global Storage Techs., Inc.*, No. C06-07289, 2007 WL 2070263, at *4
(N.D. Cal. July 17, 2007) ("use of the decimal standard on . . . packaging was
clearly permitted by the legislature" and thus within *Cel-Tech*'s safe harbor).  By
*complying* with federal law, Defendants cannot *violate* state law.

### D.      Plaintiff's Claims Lack Factual Support and Particularity

Merely reciting statutory elements and stating legal conclusions is
insufficient to satisfy the requirements of Rule 8.  Plaintiff must allege "enough
facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at
570.  Because Plaintiff's claims sound in fraud, Plaintiff must also "articulate the

16

who, what, when, where, and how of the misconduct alleged" that is required by
Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009)
(claims sounding in fraud under the UCL and CLRA must be pled with
particularity); *see also Herrington v. Johnson & Johnson Consumer Cos.*, No. C
09-1597 CW, 2010 WL 3448531, at *14 (N.D. Cal. Sept. 1, 2010) (dismissing UCL
and CLRA claims not pled with particularity).  Plaintiff alleges, repetitively, that
Rehab Green Tea is unsafe and ineffective, but fails to meet the pleading
requirements.[18]

     ***Insufficient Toxicity Allegations.***  Plaintiff's conclusory allegations about
EGCG toxicity are woefully inadequate, with no nexus to the Rehab Green Tea at
issue.  When viewed most charitably, they amount to the following:

- Some (unidentified) studies from 20 years ago revealed liver toxicity
  based on consumption of an unknown amount of EGCG;
- About 10 years ago French and Spanish authorities recalled Exolise (an
  unrelated supplement containing an unknown amount of EGCG);
- About 3.5 years ago, the FDA presented evidence that Hydroxycut
  products caused liver toxicity (although Hydroxycut contained EGCG, the
  FDA did not identify EGCG as the cause of the liver toxicity); and
- (Unidentified) medical literature on liver toxicity of (unidentified)
  products containing (unknown amounts) of EGCG "continued to mount."

(FAC ¶¶ 24-31.)  None of the foregoing "facts" have any bearing on whether the
level of EGCG naturally found in the green tea that is part of Rehab Green Tea is
unsafe or whether Rehab Green Tea itself is unsafe.[19]

---

[18] The CLRA claims are particularly deficient.  Plaintiff merely lists various
statutory provisions and repeats the same conclusory allegations without describing
how Defendants' conduct violates any of the listed provisions.  (FAC ¶¶ 52-55.)  A
complaint cannot survive based on "[t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

[19] Plaintiff alleges a litany of "missing" warnings (*e.g.*, FAC ¶ 31) despite the
paucity of her toxicity allegations.  Aside from failing to allege any facts or law

(Footnote continues on next page.)

***Insufficient Efficacy Allegations.*** Plaintiff's efficacy claims are likewise deficient. She claims in conclusory fashion that Rehab Green Tea "does not work" because it contains caffeine, which is a diuretic. (FAC ¶ 21.) She does not allege facts sufficient to demonstrate how an unspecified amount of caffeine prevents one consuming a 16-ounce beverage from being hydrated. She also makes conclusory non-specific allegations that Rehab Green Tea is "nothing like a sports drink," but offers nothing further to support her claim — no studies, reports, comparisons to an actual sports drink, or personal experience.[20] Standing alone, her statements that Rehab Green Tea does not hydrate (or re-fresh, re-hydrate, re-vive, or re-habilitate) simply because it contains caffeine are insufficient to state a claim. *See Rosen v. Unilever U.S., Inc.*, No. C 09-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010) ("Plaintiff's allegation that partially hydrogenated oil is not nutritious is devoid of any allegations of facts to support that allegation.").[21]

***Insufficient "Not Naturally Loaded" Allegations.*** Plaintiff claims, on information and belief, that Rehab Green Tea is not "naturally loaded" with EGCG because the EGCG is synthetic. (FAC ¶ 36.) She provides no factual support — such as a simple, inexpensive laboratory analysis of the contents of Rehab Green Tea — sufficient to support this assertion. *Iqbal*, 556 U.S. at 677.

---

(Footnote continued from previous page.)

warranting such warnings, she ignores the fact that Rehab Green Tea advises consumers to "consume responsibly." (*See* RJN, Ex. A.)

[20] There is no accepted standard in either the beverage industry or anywhere else for what constitutes a "sports drink." Beverages marketed as "sports drinks" vary widely in the extent to which they contain sodium, potassium, other electrolytes, and other ingredients.

[21] In fact, the scientific literature is clear that levels of caffeine lower than 226 mg have no diuretic effect whatsoever. Armstrong, *Caffeine, Fluid-Electrolyte Balance, Temp. Reg. and Exercise-Heat Tolerance*, 35 Exerc. Sport Sci. Rev. 135 (2007) ("All studies in which caffeine doses were less than 226 mg . . . reported no statistical difference [in diuretic effect of caffeine and water] . . . . No difference was reported in 17 experiments[], when up to 553 mg of caffeine was consumed.").

***Insufficient Allegations of Reliance.***  In addition, although Plaintiff alleges that she was "exposed to" and read Defendants' alleged advertising, Plaintiff does not specify any statements or advertisements on which she personally relied.  With respect to advertising, Plaintiff does not point to any specific ad, though she generally references Defendants' "broad-based" and "extensive" advertising campaign.  (*E.g.*, *id.* ¶¶ 7, 10.)  To the limited extent Plaintiff premises her claims on statements that Rehab Green Tea is "naturally loaded" and "hydrates like a sports drink," she does not allege that any of this marketing language influenced her decision to buy Rehab Green Tea.  *See Low v. LinkedIn Corp.*, No. 11-CV-01468 LHK, 2012 WL 2873847, at *11 (N.D. Cal. July 12, 2012) ("Plaintiffs never alleged reliance on any specific representation or advertising.").  She admits, in fact, that she purchased Rehab Green Tea "believing it was reasonably safe," not because it was "naturally loaded" with EGCG or because it "hydrates like a sports drink."  (*See id.* ¶¶ 12, 33.)

Plaintiff's allegations — declarative conclusions that are "merely consistent" with Plaintiff's accusations of wrongdoing — cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotation and citation omitted).

## E.  Plaintiff Fails to State a UCL or CLRA Claim

### 1.  No Standing to Assert UCL or CLRA Claim

Plaintiff lacks standing under the UCL because she has not alleged facts showing that she "suffered an injury in fact" and "lost money or property" as a result of the alleged unfair competition.  As discussed above, she suffered no cognizable economic injury.  (*See* Section IV.A.)  Her claim is indistinguishable from the plaintiffs' claim in *Boysen*, in which the mere purchase of a beverage was not enough.  *Boysen*, 2012 WL 2953069, at *2, *4.  Plaintiff similarly lacks standing under the CLRA because she has not sufficiently alleged that she has

suffered any damage.  *See Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 641, 88 Cal. Rptr. 3d 859 (2009) (dismissing claim for failure to allege damage under the CLRA).  Thus, Plaintiff's allegations of economic injury fail under the UCL and CLRA for the same reasons that they fail under Article III.

Plaintiff additionally lacks UCL and CLRA standing because she has not adequately pled reliance.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (Where a UCL claim sounds in fraud, plaintiffs "are required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [their] injury-producing conduct.") (citations and quotations omitted); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1112.  As discussed above (Section II), Plaintiff fails to identify which, if any, of the various statements referenced in the complaint was the "immediate cause" of the alleged harm.  *Cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 93 Cal. Rptr. 3d 559 (2009) (a plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements").  Plaintiff alleges only that she purchased Rehab Green Tea believing it was reasonably safe.  (*See* FAC ¶ 12.)  Because she does not allege reliance on any aspect of the product's advertising, she lacks standing.

## 2.  Plaintiff's Affirmative Misrepresentation Claims Involve Non-Actionable Puffery

Statements like "naturally loaded," "hydrates like a sports drink," and "RE-FRESH, RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate" are non-actionable puffery.[22]  Under the UCL and CLRA, "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not

---

[22] Even if actionable, none of the statement is likely to deceive a reasonable customer, and Plaintiff's conclusory allegations do not satisfy Rule 8's pleading requirements.  Plaintiff must either allege an "active misrepresentation" or an "active concealment" *of a fact* that is "contrary to what has been represented about the" products.  *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 WL 2031765, at *3 (N.D. Cal. July 30, 2009).  Plaintiff has not done so.

1  rely, and hence are not actionable." *Annunziato v. eMachines*, 402 F. Supp. 2d

2  1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Ent'mt, Inc. v. Tektronix Inc.*, 343

3  F.3d 1000, 1005 (9th Cir. 2003)); *see also Southland Sod Farms v. Stover Seed Co.*,

4  108 F.3d 1134, 1145 (9th Cir. 1997) ("Puffing is exaggerated advertising,

5  blustering, and boasting upon which no reasonable buyer would rely[.]"); *Cook,*

6  *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990).

7  In contrast, a statement that is "quantifiable, that makes a claim as to the specific or

8  absolute characteristics of a product, may be an actionable statement of fact while a

9  general, subjective claim about a product is non-actionable puffery." *Newcal*

10 *Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008).  Whether

11 a statement is puffery may be decided as a matter of law on a motion to dismiss.

12 *Cook*, 911 F.2d at 245-46.

13       The phrase "naturally loaded" is a prime example of a non-objectively

14 quantifiable claim that is not actionable.  *See Tait v. BSH Home Appliances Corp.*,

15 No. SACV 1000711 DOC, 2011 WL 3941387, at *3 (C.D. Cal. Aug. 31, 2011)

16 (stating washer labels "Xxtra Sanitary" or "Sanitary" are "not statements about

17 specific or absolute characteristics of a product"); *Consumer Advocates v. Echostar*

18 *Satellite Corp.*, 113 Cal. App. 4th 1351, 1361, 8 Cal. Rptr. 3d 22 (2003) (holding

19 that "crystal clear" and "CD quality" sound are not factual representations, but are

20 "boasts, all-but-meaningless superlatives").

21       The statements "hydrates like a sports drink" and "RE-FRESH, RE-HYDRATE,

22 RE-VIVE, or in other words, Re-habilitate" — marketing language lacking any

23 objectively measurable statements of fact — are likewise non-actionable.  Both

24 phrases are "exaggerated advertising, blustering, and boasting upon which no

25 reasonable buyer would rely." *Southland Sod Farms*, 108 F.3d at 1145.  In

26 addition, "like" is a general term "that is so vague and indeterminate that it will be

27 understood as a mere expression of opinion."  5 J. Thomas McCarthy, McCarthy on

28 Trademarks and Unfair Competition, § 27:38 (4th ed.).  The phrase "like a sports

drink" counts among the non-actionable puffery on which a consumer could not reasonably rely.  *See*, *e.g., Cook*, 911 F.2d at 246 (statements implying lower rates and better service than competitors were non-actionable puffery); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 3795013, at *4-6 (N.D. Cal. Aug. 26, 2011) (dismissing UCL and CLRA claims; statement that the iPad can be used "just like a book" is mere puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (claims that product is "'faster, more powerful, and more innovative than competing machines' are non-actionable puffery").[23]

### 3. Plaintiff Has Not Sufficiently Alleged a Duty to Disclose

Plaintiff's allegations are also insufficient to support a nondisclosure or omission claim based on Defendants' alleged failure to disclose the purported dangers associated with EGCG.  (*See* FAC ¶ 5.)  Plaintiff cannot proceed under the UCL or CLRA without alleging facts giving rise to an affirmative duty to disclose, and an omission must concern a fact Defendants were "obliged to disclose," or "be contrary to a representation actually made" by Defendants.  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 838, 5 Cal. Rptr. 3d 118 (2006).  A duty to disclose may arise in four circumstances, when the defendant (1) is in a fiduciary relationship with the plaintiff, (2) had exclusive knowledge of material facts not known to plaintiff, (3) actively concealed a material fact from plaintiff, or

---

[23] In any event, the statements at issue are not actionable representations "because [they are] true." *Consumer Advocates*, 113 Cal. App. 4th at 1360.  *First*, EGCG occurs "naturally" in green tea, and the drink is "loaded," *i.e.*, contains green tea.  *Second*, "hydrates like a sports drink" is true.  While there is no regulatory definition of "sports drink," they are often distinguished from other beverages by the presence of varying amounts of electrolytes such as sodium, potassium, and magnesium.  *See, e.g., Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 514 (S.D.N.Y. 2009) (noting electrolytes in sports drinks include sodium and potassium, which "aid[] in hydration"); FDA, *Compliance Policy Guide Sec. 510.800 Beverages — Serving Size Labeling* (Dec. 2010) at 4, *available at* www.fda.gov/downloads/ICECI/.../UCM238854.doc ("this term ["sports drinks"] is used by industry and has not been defined by the agency").  The Rehab Green Tea can states that it contains "electrolytes," and the Supplement Facts label lists the actual electrolytes in Rehab Green Tea, which fully validates the statement that Rehab Green Tea "hydrates like a sports drink."  (RJN, Ex. A.)

1   (4) made a partial representation while suppressing a material fact.  *Wilson v.*

2   *Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).

3           None of these circumstances is present here.  There is no fiduciary

4   relationship between Defendants and Plaintiff, and the "material facts" (according

5   to Plaintiff) are the various studies and product recalls Plaintiff references in her

6   complaint — none of which involve Rehab Green Tea.  (FAC ¶¶ 23-31.)

7   Moreover, Plaintiff admits that there was "overwhelming publicity, regulatory

8   action[,] and medical literature on the toxicity of EGCG" going back more than a

9   decade.  (*Id.* ¶ 31.)  These allegations demonstrate that Defendants did not have

10   exclusive knowledge regarding the "material facts," and certainly could not have

11   actively concealed or suppressed them from Plaintiff.  Based on these facts, there

12   was no obligation to disclose giving rise to a UCL or CLRA action.

13           **F.     Plaintiff Fails to State Warranty Claims**

14           Plaintiff fails to allege any facts supporting breach of any warranty.[24]

15   Plaintiff contends that Defendants expressly warranted that Rehab Green Tea (1) is

16   "naturally loaded with EGCG"; (2) "hydrates like a sports drink"; (3) will "RE-

17   FRESH, RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate"; and (4) will help

18   consumers "recover from a long night" and "bring[] them back after a hard day's

19   night." (FAC ¶ 81), and that Defendants impliedly warranted that Rehab Green Tea

20

21           _____

            [24] To plead breach of an express warranty, Plaintiff must allege the exact

22   terms of the warranty, that she reasonably relied on the warranty, and that a breach
     of the warranty proximately caused her injury.  *Dvora v. Gen. Mills, Inc.*, No. CV

23   11-1074, GW (PLAx), 2011 WL 1897349, at *9 (C.D. Cal. May 16, 2011).  She
     does not allege any of these elements.  For a breach of implied warranty, Plaintiff

24   must allege, in relevant part, that the product was not of the same quality as those
     generally accepted in the trade, was not fit for the ordinary purposes for which the

25   product is used, or did not conform to the quality established by the parties' prior
     dealings or by usage or trade.  Cal. Com. Code § 2314; *see also Andrade v.*

26   *Pangborn Corp.*, No. C 02-3771 PVT, 2004 WL 2480708, at *20 (N.D. Cal. Oct.
     22, 2004).  Plaintiff must further allege that she was harmed by the lack of expected

27   quality.  Cal. Com. Code § 2314; Judicial Council of California Civil Jury
     Instruction (CACI) No. 1231.  Plaintiff similarly fails to allege facts sufficient to
     prove any of these elements.

28

is "reasonably safe, effective, and adequately tested for its intended use, *i.e.*, to be used to rehydrate, revive, rehabilitate, and as a food beverage or dietary supplement . . . ." (*id.* ¶ 92).  None of the foregoing is sufficient to create a warranty.

Nor has Plaintiff alleged reliance or causation or injury, much less all three elements as required.  Other than claiming she purchased Rehab Green Tea believing it was reasonably safe, Plaintiff fails to allege reliance on any statement, including the statements she claims create an express warranty.  She also has not alleged that the Rehab Green Tea she purchased was undrinkable or otherwise not fit for consumption, that she suffered any ill effects from consuming it (*i.e.*, it caused her some harm), or that it did not perform as advertised (*i.e.*, it did not hydrate or refresh her).  (FAC ¶ 12.)  *See, e.g., Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (an implied warranty under § 2314 "provides for a minimum level of quality"; it "does not impose a general requirement that goods precisely fulfill the expectation of the buyer") (quotations and citation omitted).

### G.   "Unjust Enrichment" Is Not a Cause of Action

Unjust enrichment is a general principle underlying various legal theories and remedies that is synonymous with restitution.  *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010).  Because California does not recognize an independent cause of action for unjust enrichment, Plaintiff's claim must be dismissed with prejudice.  *Rutherford v. FIA Card Servs., N.A.*, No. CV 11-04433 DDP (MANx), 2012 WL 5830081, at *5 (C.D. Cal. Nov. 16, 2012); *Arroyo v. Aurora Bank, FSB*, No. EDCV 11-2063-DOC (JEMx), 2012 WL 137854, at *2 (C.D. Cal. Jan. 18, 2012); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th

779, 794, 131 Cal. Rptr. 2d 347 (2003).[25]

## H.    The Court Should Dismiss Plaintiff's CLRA Damage Claim

The CLRA requires Plaintiff to provide written notice to Defendants at least 30 days prior to commencing an action seeking damages.  Cal. Civ. Code § 1782(a).  Although Plaintiff's notice letter (dated November 7, 2012) states Plaintiff would amend her claims to seek damages at a later date, her initial complaint (filed November 5, 2012) *already alleged damages at the time she sent the letter.*  (*Compare* Initial Compl. ¶ 56 *with* RJN, Ex. G.)  Plaintiff was required to provide notice at least one month earlier — on or before October 6 — not, as here, two days *after* filing her damages claim.  Her failure to comply with the notice requirements warrants dismissal with prejudice of her requests for restitution and disgorgement.  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009) (the CLRA's "procedural requirements are strictly adhered to," and non-compliance results in dismissal "with prejudice").

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the complaint in its entirety, with prejudice.

Dated:  March 8, 2013                    MORRISON & FOERSTER LLP


                                         By: /s/ Dan Marmalefsky
                                             Dan Marmalefsky

                                         *Attorneys for Defendants*
                                         *Monster Energy Company and*
                                         *Monster Beverage Corporation*

---

[25] Plaintiff's unjust enrichment claim is based on the same allegations underlying all of her causes of action and fails for the same reasons those causes of action fail.  If the Court finds Plaintiff has adequately pled any of her other causes of action, her unjust enrichment claim should still be dismissed because unjust enrichment "applies only in the absence of an adequate remedy at law."  *Overton v. Bird Brain, Inc.*, No. SACV 11-1054 DOC (ANx), 2012 WL 909295, at *7 (C.D. Cal. Mar. 15, 2012) (quotations and citations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 8th day of March, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

                         /s/ Dan Marmalefsky
                           Dan Marmalefsky

                         ***Attorneys for Defendants***
                         ***Monster Energy Company and***
                         ***Monster Beverage Corporation***

la-1199491

DEFENDANTS' MOTION TO DISMISS