ANDREWS & THORNTON
ANNE ANDREWS (103280)
JOHN C. THORNTON (84492)
SEAN THOMAS HIGGINS (266888)
2 Corporate Park, Suite 110
Irvine, CA 92602
Telephone: 949/748-1000
949/315-3540 (fax)
aa@andrewsthornton.com
jct@andrewsthornton.com
shiggins@andrewsthornton.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER WOODING, On Behalf of Herself, All Others Similarly Situated and the General Public, | Case No.: SACV12-2090 DOC (JPRx) |
| Plaintiff, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION** |
| v. | |
| MONSTER ENERGY COMPANY, MONSTER BEVERAGE CORPORATION F/K/A HANSEN NATURAL CORPORATION, and DOES 1-10, | Date: May 6, 2013 Time: 8:30 a.m. CourtRoom: 9D |
| Defendants. | Hon. David O. Carter |

## TABLE OF CONTENTS

I.   **INTRODUCTION**................................................................................1

II.  **ARGUMENT**....................................................................................2

A.  PLAINTIFF HAS ALLEGED PLAUSIBLE FACTS; NOTHING MORE IS REQUIRED..............................................................................2

B.  PLAINTIFF HAS SUFFERED INJURY IN FACT AND HAS ARTICLE III STANDING..............................................................................4

C.  THERE IS NO FEDERAL PREEMPTION WHERE DEFENDANTS VIOLATE BOTH FEDERAL AND IDENTICAL STATE LAW...........................................8

    1.  *Plaintiff is not attempting to privately enforce the FDCA*..........................8

    2.  *There are no preemption provisions in the FDCA that would insulate Defendants' conduct*................................................................................9

    3.  *There is no preemption since Defendants violated both federal and (identical) state law*................................................................................12

    4.  *The Court Should Not Stay Proceedings Because the FDA and FTC Are Not Reviewing Rehab Green Tea for the Adequacy of Warnings with Respect to EGCG*................................................................................13

D.  THERE IS NO SAFE HARBOR FOR FRAUDULENT CONDUCT....................15

E.  PLAINTIFF HAS ADEQUATELY PLED A UCL AND CLRA CLAIM................15

F.  PLAINTIFF HAS ADEQUATELY PLED RELIANCE....................................16

G.  PLAINTIFF HAS ADEQUATELY ALLEGED BREACH OF EXPRESS AND IMPLIED WARRANTIES..........................................................17

    1.  *Plaintiff has adequately pled Breach of Express Warranties*........................17

    2.  *Plaintiff has adequately pled Breach of Implied Warranties*........................18

**H.** DEFENDANTS' MISREPRESENTATIONS ARE MORE THAN PUFFERY..........20

**I.** UNJUST ENRICHMENT.......................................................................21

**J.** PLAINTIFF HAS COMPLIED WITH CLRA NOTICE REQUIREMENTS.............21

**III. CONCLUSION**................................................................................23

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)……………………………..……2

*Boysen v. Walgreen Co.,*

    C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012)……………………….........6

*Brewer v. Indymac Bank,*

    609 F. Supp. 2d 1104, 1112 (E.D. Cal. 2009)……………………………………………...2,3

*In re Ferrero Litig.,*

    794 F. Supp. 2d 1107, 1113 (S.D. Cal. 2011)………………………………………....10,11,20

*In re Bayer Corp. Combination Aspirin Products Mktg. and Sales Practices Litig.,*

    701 F.Supp.2d 356 (E.D.N.Y.2010)………………………………………………………5,6

*In re Fruit Juice Products Mktg. & Sales Practices Litig.,*

    831 F. Supp. 2d 507, 511 (D. Mass. 2011)…………………………………………...6

*In re Hydroxycut Mktg. & Sales Practices Litig.,*

    801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011)……………………………………………5,6

*Lujan v. Defenders of Wildlife,*

    504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)………………….4

*Mut. Pharm. Co. v. Watson Pharm., Inc.,*

    CV 09-5700 PA (RCX), 2009 WL 3401117 *1-2 (C.D. Cal. Oct. 19, 2009)……………….14

*Overton v. CVS Caremark Corp.,*

    No SACV 12-09282 DOC, 2012 U.S. Dist. LEXIS 185697 (C.D. Cal. Dec. 11, 2012)…....11

*Peviani v. Hostess Brands, Inc.,*

    *750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010)*………………………………………………11

*Pom Wonderful LLC v. Coca Cola Co.,*

    CV 08-06237 SJO FMOX, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013)..........................9

*Ries v. Hornell Brewing Co., Inc.,*

    10-1139-JF (PVT), 2010 WL 2943860 *4 (N.D. Cal. July 23, 2010)......................10,13

*Rivera v. Wyeth–Ayerst,*

    283 F.3d 315, 319 (5th Cir.2002)...........................................................6

*Syntek Semiconductor Co., Ltd. v. Microchip Technology, Inc.,*

    307 F.3d 775, 780 (9th Cir.2002)...............................................13,14,15

*Maya v. Centex Corp.,*

    658 F.3d 1060, 1068 (9th Cir. 2011)........................................................2

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*

    429 U.S. 252, 262, 97 S. Ct. 555, 562, 50 L. Ed. 2d 450 (1977)................................5

*Wyeth v. Levine,*

    555 U.S. 555, 565 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009)..........................8,10,14


**STATE CASES**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*

    20 Cal. 4th 163, 182, 973 P.2d 527(1999).................................................15

*Hauter v. Zogarts,*

    14 Cal. 3d 104, 117 n. 14 (1975)..........................................................19

*Weinstat v. Dentsply Int'l, Inc.,*

    180 Cal. App. 4th 1213, 1227 (2010)......................................................17

**FEDERAL STATUTES**

Nutritional Labeling and Education Act (NLEA) Pub.L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364...............................................................................................................10

21 C.F.R. § 100.1(c)(4)..........................................................................................10

21 U.S.C. § 343(a)................................................................................10,11,12,15

21 U.S.C. § 343(q)..........................................................................................9,10

21 U.S.C. § 343-1(1)(4) ..................................................................................9,10

21 U.S.C. § 343–1(a)........................................................................................9,10

21 U.S.C. 343(r)....................................................................................................12

Federal Food Drug and Cosmetic Act (FDCA) (21 U.S.C. § 301 *et seq.*,).............8,9,10,12,15

**STATE STATUTES**

Unfair Competition Law (UCL) (Cal. Business & Prof. Code § 17200)...........5,6,9,11,15,16,21

Consumers Legal Remedies Act (CLRA) (Cal. Civil Code § 1750 *et seq*)...........9,15,16,21,22

Cal. Health & Safety Code § 109875 *et seq*...................................................12

Cal. Health & Safety Code § 110660.............................................................9,12

Cal. Health & Safety Code § 110670.............................................................9,12

Cal. Uniform Commercial Code § 2314..........................................................19

California Civil Code §1782.............................................................................16,21

California Health and Safety Code §110290........................................................9

California Health and Safety Code §110245 *et seq*............................................9

California Health and Safety Code §110380.........................................................9

California Health and Safety Code §110100.........................................................9

California Health and Safety Code §110085.........................................................9

California Health and Safety Code §110390 et seq........................................................9

California Health and Safety Code §110660..............................................................9

California Health and Safety Code §110422..............................................................9

California Health and Safety Code §110680..............................................................9

California Health and Safety Code §110705..............................................................9

California Health and Safety Code §110760..............................................................9

California Health and Safety Code §110765..............................................................9

California Health and Safety Code §110445..............................................................9

California Health and Safety Code §110550..............................................................9

California Health and Safety Code §110545..............................................................9

California Health and Safety Code §110620..............................................................9

California Health and Safety Code §110625..............................................................9

California Health and Safety Code §110630..............................................................9

I.      **INTRODUCTION**

Plaintiff has filed a consumer protection class action against Defendants Monster Energy Company and Monster Beverage Corporate in relation to their marketing of Rehab Green Tea + Energy (hereinafter "Rehab Green Tea.") (First Amended Complaint, ¶ 3.) There is no dispute Rehab Green Tea is marketed and labeled as an "energy supplement" but is regulated as both a food and a dietary supplement (FAC, ¶ 3; Defendants' Memorandum of Points and Authority ISO Motion to Dismiss, p.9, line 6-7.) There is further no dispute that Rehab Green Tea is marketed to and actually contains, as part of a proprietary blend, epigallocatechin-3-gallate or "EGCG." (FAC, ¶ 3; *see generally* Defendants' P & A.)  While EGCG is a tea catechin found in green tea, Plaintiff alleges there has been considerable controversy for over a decade about the safety of EGCG when extracted or synthesized and put into dietary supplements. (FAC, ¶¶ 22-31.) This includes dozens of peer-reviewed scientific studies on the dangers of EGCG, regulatory action taken by numerous governments around the world against products containing EGCG based on safety concerns (Hydroxycut and Exolise), and dozens of adverse events reported from ingestion of EGCG or green tea extract products. (*See id.*) Thus, a core allegation of Plaintiff's case is that Defendants with knowledge of the controversy surrounding the safety of EGCG misled and defrauded consumers in a number of ways, primarily by failing to disclose the health risks of EGCG. (*Id.*)  Further, Plaintiff alleges Defendants misrepresent that Rehab Green Tea is natural to further reassure consumers of the product's safety when, in fact, it contains synthetic EGCG which is not natural. (FAC, ¶¶ 32-46.)

Additionally, Plaintiff alleges several misrepresentations as to the efficacy of Rehab Green Tea, namely that it will hydrate like a sports drink despite the fact it contains large amounts of caffeine, a diuretic, that for consumers like Plaintiff does the opposite of hydrate. (*Id.*)

Defendants do not deny they made any of the alleged representations present in the advertising and labeling of Rehab Green Tea. (FAC, ¶ 33, *see generally* Defendants' P & A.) Plaintiff alleges that a result of Defendants' misrepresentations about the safety and efficacy of Rehab Green Tea, she suffered economic injury. (FAC, ¶ 12.) Plaintiff has made factual allegations based on Defendants' own words and the effect those had on Plaintiff and consumers. (*See generally* FAC.) Nothing more is required, and for the reasons herein, Defendants' Motion to Dismiss should be denied.

## II.   **ARGUMENT**

As Defendants correctly point out, for purposes of FRCP 12(b)(6) a Court must accept as true Plaintiff's factual allegations. *See, e.g., Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1112 (E.D. Cal. 2009). Further, a court must give Plaintiff the benefit of all reasonable inferences from the facts as alleged. *Id.* While a court does not have to assume the truth of conclusory allegations of law or unwarranted inferences drawn therefrom, if a plausible set of facts has been alleged, challenges to those factual allegations cannot be resolved on a motion to dismiss. *See id.*

Conversely, while analysis under FRCP 12(b)(1) also assumes Plaintiff's factual allegations as true, it does not test the plausibility of those factual allegations under *Twombly* or *Iqbal. Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

A.   Plaintiff Has Alleged Plausible Facts; Nothing More is Required

Defendants repeatedly characterize Plaintiff's clear factual allegations as "conclusory," no doubt hoping to confuse the Court with similar language used in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and its progeny. However, *Twombly* and the cases following which discuss pleading standards are concerned about legal conclusions (in *Twombly* the issue was a legal conclusion regarding conspiracy) not clear allegations of facts and specific conduct on the part of Defendants. *See id.* at 555-56. As discussed the rule remains

1  that plausible factual allegations and their reasonable inferences are assumed true. *Brewer,*

2  *supra.*

3        Plaintiff has alleged a series of plausible facts, including that Rehab Green Tea contains

4  EGCG, which is well known to be a dangerous ingredient, and that Defendants employ a series

5  of very specific misrepresentations (that are quoted directly from advertising and labeling) with

6

7  respect to the safety, efficacy and other properties of Rehab Green Tea, all of which caused

8  Plaintiff and the class injury. Plaintiff spends considerable time outlining the history of medical

9  literature, regulatory action and adverse events that comprise the controversy surrounding the

10 safety of EGCG as well as considerable time quoting and outlining each of Defendants'

11 misrepresentations with respect to the efficacy of Rehab Green Tea as well as its composition.

12

13 (FAC, ¶¶ 3-11, 18-46.) Defendants' characterization of those clear and specific factual

14 allegations as conclusory is not only irrelevant because Rule 12 assumes them (as well as all

15 reasonable inferences therefrom) to be true, but it is inaccurate because a simple review of the

16 factual allegations demonstrates they are detailed, specific and not conclusory.

17        Defendants apparently hope to escape liability by challenging the veracity of Plaintiff's

18 otherwise clear and specific factual allegations, or by requiring Plaintiff to introduce into

19

20 evidence studies referenced in the Complaint or to produce their own laboratory testing to

21 substantiate their factual allegations. However, a Rule 12 Motion to Dismiss is not the proper

22 vehicle for Defendants' argument that Plaintiff's factual allegations are not true or that Plaintiff

23 does not have admissible evidence to support the allegations or reasonable inferences drawn

24 therefrom.[1] Thus, Defendants' challenge to Plaintiff's evidentiary support for the content of

25

26 _____

27 [1] Though Rule 12 Motions do not consider extrinsic evidence except for those judicially
   noticeable (*Brewer, supra*) should the Court so desire, Plaintiff is willing to show the Court in-
28 camera evidence in the form of medical literature, press releases about regulatory action and
   adverse events supporting claims of EGCG's safety risks. Moreover, although laboratory testing
   conducted by consultants hired Plaintiff and not designated as experts are protected attorney

Points & Authorities in Opposition to Motion to Dismiss

EGCG in Rehab Green Tea ignores the reality that: 1) Plaintiff has not alleged how much EGCG is present in Rehab Green Tea, 2) even though it can reasonably be inferred based on Plaintiff's other allegations that she is necessarily alleging that the level of EGCG in Rehab Green Tea renders the product unreasonably dangerous, reasonable inferences are entitled to be taken as true for purposes of Rule 12 motions, 3) it is Defendants themselves who claim the product is "loaded" with EGCG, and 4) Plaintiff does have evidentiary support for this and all of her other allegations. In fact, Plaintiff gave substantial evidentiary support to Defendant even though she was not obligated to do so, including medical literature, adverse events and laboratory testing. (Declaration of Sean T. Higgins, ¶ 6.)

In sum, Plaintiff has adequately pled factual allegations supporting liability. Moreover, even if not presumed true, she does possess evidentiary support for all of her allegations.

       B.     <u>Plaintiff Has Suffered Injury in Fact and Has Article III Standing</u>[2]

Article III standing only requires Plaintiff to plead (1) that she suffered an injury in fact, (i.e. an invasion of a legally protected interest), (2) that there is a causal connection between the alleged injury and conduct complained of, and (3) that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). For purposes of a Rule 12 motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citation omitted.)

---

work-product not subject to disclosure absent exceptional circumstances, (*See, e.g.*, Federal Rules of Civil Procedure 26(b)(4)(D); *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1043 (E.D. Cal. 2002)) Plaintiff is also prepared to show the Court such reports in-camera.
[2] Defendants removed this action from state court yet now challenge this Court's subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1). While considered unusual, this Court must still consider the basis for Defendants' Motion to Dismiss since jurisdiction cannot be waived. *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir. 1993).

There is no doubt the "injury in fact" prong of Article III standing embraces purely economic injury. *See, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262, 97 S. Ct. 555, 562, 50 L. Ed. 2d 450 (1977). Courts have found Article III standing in UCL claims based on economic injury from an unsafe and ineffective product in cases identical to this case. *See, e.g., In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011). *In re Hydroxycut* involved identical UCL claims based on failure to warn of the dangerousness of a consumer product (which not incidentally also contained EGCG) that was also ineffective made by class plaintiffs who suffered no actual harm themselves:

> Defendants argue that Plaintiffs have failed to plead any injury because Plaintiffs do not claim that they were physically harmed by the Hydroxycut products. However, the injury to Plaintiffs occurred at the time they purchased the Hydroxycut products and did not receive the benefit of their bargain. Plaintiffs sought to purchase a safe and effective weight loss product but did not receive the product as promised. As a result, they have lost the money they paid for the product and have alleged an economic injury. "Monetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3rd Cir.2005).

*Id.*

Likewise, in *In re Bayer Corp. Combination Aspirin Products Mktg. and Sales Practices Litig.*, 701 F.Supp.2d 356 (E.D.N.Y.2010), the court held that a plaintiff is injured when they receive less than what they were promised. Here too the plaintiff did not argue that they were physically harmed. *Id.*

Plaintiff in this case alleged that she received a product that was ineffective as either a hydration beverage or for other purposes marketed and possessed potential health risks, and that, as a result, she suffered injury in fact and lost money. (FAC, ¶ 12.) This case is identical to *In re*

*Hydroxycut* because 1) the plaintiff brought UCL claims based on the lack of safety or efficacy of the product in question, and 2) the plaintiff alleged an economic harm in the form of the purchase price with no accompanying physical harm. This case is also analogous to *In re Bayer* in that the plaintiff purchased a product based on misrepresentations of the defendant but did not suffer any physical harm.

This case is nothing like *Rivera v. Wyeth–Ayerst*, 283 F.3d 315, 319 (5th Cir.2002). In fact, the court *In re Hydroxycut* explained why *Rivera* was distinguishable:

> Duract, was recommended for use of short-term management of acute pain. Some
> users took the drug for long-term relief and experienced liver failure. The
> plaintiffs in Rivera sought to represent all patients who had purchased and
> ingested Duract but suffered no physical or emotional injury. The plaintiffs did
> not claim that Duract was ineffective as a pain killer or has any future health
> consequences.

*In re Hydroxycut*, 801 F. Supp.2d at 1004. Moreover, the plaintiff in *Rivera* alleged that the product was not defective as to her because, crucially, the product worked as advertised. *Rivera*, 283 F.3d at 320. Nor did the plaintiff in *Rivera* offer what additional warnings should have used. *Id.* at 321. Unlike the plaintiff in *Rivera* and like the plaintiff *In re Hydroxycut,* Plaintiff here *does* allege she received an *ineffective* product, *does* allege that the product is not safe and was defective as to *her, does* allege what additional warnings should have been used and, had they been used, would have resulted in a decision not to purchase the product, and *does not* try to represent individuals who suffered physical injury.

Aside from being a nonbinding district court decision from Massachusetts*, In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 511 (D. Mass. 2011) and its related case *Boysen v. Walgreen Co.*, C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) are distinguishable since in those cases the FDA had made a specific finding that the fruit

juice at issue did not pose an unacceptable risk, the plaintiffs did not make an allegation that the product was ineffective and did not provide the benefits advertised, the plaintiffs did not allege that the juice failed to conform to regulatory standards applicable to juices, and the plaintiffs did not allege that anyone had suffered injuries from the fruit juice. Conversely, the FDA has made no finding that Rehab Green Tea is a safe product or that EGCG is a safe ingredient. To the contrary, Plaintiff here has made numerous allegations that an ingredient in Rehab Green Tea, EGCG, is well documented to pose an unacceptable risk. Plaintiff here also claims the product was ineffective, did not conform to regulatory standards, and that other products containing the exact same ingredient have been recalled for serious injuries to consumers.

Defendants attempt to deflect attention away Plaintiff's well-pled factual allegations by again challenging the veracity and evidentiary support for Plaintiff's factual allegations. Defendants claim Hydroxycut and Exolise are unrelated products. Such an assertion is not only irrelevant in a Rule 12(b)(1) motion, which accepts Plaintiff's factual allegations as true, it is wrong. Nothing could be further from the truth. Both products are dietary supplements containing EGCG, the latter containing only EGCG. Second, contrary to Defendants' assertions otherwise, Plaintiff's factual allegations are not conclusory because she does allege Rehab Green Tea does not hydrate and that it was unfit for its intended purpose:

> These diuretic effects make Monster Rehab Green Tea + Energy **ineffective as a hydration beverage**. . . . contrary to Defendants' representations, Monster Rehab Green Tea + Energy **does not hydrate**.
>
> . . .
>
> Plaintiff did not know that ordinary consumption of the Product created serious adverse health risks or that it was **ineffective for its advertised benefits** when she purchased the Product.
>
> . . .

Plaintiff and members of the Class **were not receiving products** of the quality, nature, **fitness** or value **that had been represented by Defendants** and reasonable consumers would have expected.

(FAC, ¶¶ 35, 12, 101.) Finally, Defendants' reference to conclusory allegations about caffeine are misguided both because Rule 12(b)(1) motions accept factual allegations as true and because it is not conclusory; it is a factual allegation based on medical literature.

Defendants apparently do not challenge Plaintiff's allegations with respect to (2) that there is a causal connection between the alleged injury and conduct complained of, and (3) that the injury can be redressed by a favorable decision.

Since Plaintiff has alleged injury in fact from an unsafe and ineffective product, Defendants' Motion to Dismiss based on Article III standing/Rule 12(b)(1) should be dismissed.

C.   There is no Federal Preemption Where Defendants Violate both Federal and Identical State Law

The traditional notion is that the historic police powers of the states are only supplanted with federal law what it is the clear and manifest purpose of Congress. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 565 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009). Although the Federal Food Drug and Cosmetic Act (21 U.S.C. § 301 *et seq.*, hereinafter "FDCA") occasionally preempts conflicting state law, the fundamental tenet that a manufacturer has a duty and is at all times responsible for its labeling is the backdrop for any preemption claim under the FDCA. *Id.* at 570-71. *Wyeth* reinforced the historical notion that state law claims based on failure to warn are not preempted when a manufacturer can make changes to its label to comply with both state and federal law. *Id.* at 581.

*1.*   *Plaintiff is not attempting to privately enforce the FDCA*

As an initial matter, Defendants complain that Plaintiff attempts to privately enforce FDA regulations. Nothing could be further from the truth. Plaintiff claims Defendants violated state

Points & Authorities in Opposition to Motion to Dismiss

law (California Health and Safety Code §§ 110290, 110245 *et seq.*, 110380, 110100, 110085, 110390 et seq., 110660, 110422, 110670, 110680, 110705, 110760, 110765, 110445, 110550, 110545, 110620, 110625, 110630) (FAC, ¶ 67.) but nowhere alleges a violation of any federal law, let alone FDA regulatory law. *Pom Wonderful LLC v. Coca Cola Co.*, CV 08-06237 SJO FMOX, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) is unavailing. *Pom* was in a different procedural posture since the case was before the court on a motion for summary judgment and the defendant in that case had successfully proved compliance with all federal law. *Id.* Moreover, *Pom* involved violations of Lanham Act not at issue here. *Id.* Finally, *Pom* involved claims expressly allowed by FDCA. *Id.* However, Plaintiff is not using Unfair Competition Law (Cal. Business & Prof. Code § 17200) or the Consumers Legal Remedies Act (Cal. Civil Code § 1750 *et seq.*) to impose liability in spite of compliance with federal law. Plaintiff is arguing the opposite: that Defendants violated state law which is identical to its federal counterpart (i.e. that Defendants violated both state and federal law.) Nor is Plaintiff using the Lanham Act to enforce labeling requirements expressly allowed by the FDCA.

> 2.   *There are no preemption provisions in the FDCA that would*
>       *insulate Defendants' conduct*[3]

Defendants disingenuously try to sweep too much into FDCA's preemption clause. They attempt to sweep all state regulation of labeling.  21 U.S.C. § 343-1(1)(4) and 21 C.F.R. §

---

[3] Plaintiff concedes that the very strict and narrow express preemption clause relating to the listing of nutritional ingredients (21 U.S.C. § 343(q)) found in 21 U.S.C. § 343-1(a)(4)  allow Defendants to list the proprietary blend without listing sub-ingredients like EGCG, and as such, their compliance under that section prevents a court from imposing a requirement that they disclose the amount of EGCG in their product. However, it should be noted, that no federal law prevents them from doing so and in the interests of full disclosure to consumers Defendants would be well advised to voluntarily do so. To be clear none of Plaintiff's other allegations (specifically including, but not limited to, failure to warn of the dangers of EGCG, misrepresentations about the hydration proprieties of Rehab Green Tea or misrepresentations about the natural source of EGCG) are preempted since this conduct was not only not approved by FDCA, it was expressly prohibited. There is no preemption where Defendants violated federal and identical state law.

100.1(c)(4) have to do specifically with 21 U.S.C. § 343(q) and other provisions have nothing to do with the bulk of Plaintiff's claims.

*Wyeth* makes it clear that states may regulate failure to warn claims when manufacturers are able to comply with both state and federal law. And *Ries v. Hornell Brewing Co., Inc.*, 10-1139-JF (PVT), 2010 WL 2943860 *4 (N.D. Cal. July 23, 2010), a case cited by Defendants, acknowledged the lack of preemption for false and misleading claims:

> Nonetheless, Congress has left the states with at least some authority to regulate food labeling. Because Section 343(a) is not enumerated among the preemption provisions of 21 U.S.C. § 343–1(a), states are free to set their own standards as to whether 'labeling is false or misleading in any particular. . .

Additionally, "the NLEA states that it 'shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a)] of the [FDCA].' Pub.L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1113 (S.D. Cal. 2011) Thus, while it is true that 21 U.S.C. § 343(q) allows Defendants to list the total content of their proprietary "Rehab Energy Blend" without also disclosing the content of the sub-ingredient EGCG, Plaintiff has alleged far more violations with respect to Defendants' labeling than the failure to disclose the quantity of EGCG. Defendants point to no preemption clause in the FDCA, no case law, no FDA regulation or no other law that would either permit them to not disclose material safety risks of the product or prevent them from so disclosing. This core deficiency in Defendants' conduct simply cannot be preempted because both federal and state law not only allowed them to issue warnings, in order to avoid being false and misleading in their labeling state and federal law *required* Defendants to disclose the safety risks of EGCG.

It is not true Defendants' claim of "natural" is acceptable under federal law. While indicating the source of an ingredient as natural is permitted under 21 U.S.C. § 343(q), such

claims are only permitted if they are true; otherwise they are false, misleading and misbranded under 21 U.S.C. § 343(a). Defendants' claim that the source of EGCG in their product is "natural" is false and misleading under both state and federal law because Rehab Green Tea is "loaded" with EGCG. Plaintiff intends to prove the EGCG used is not "natural" since the amount of EGCG naturally occurring in green tea is small. As such, to "load" Rehab Green Tea with EGCG extremely large volumes of raw green tea are needed. Plaintiff will show that it would not be cost-effective for Defendants to extract enough EGCG from raw green tea to load the product, which explains why they use cheaper "synthetic" EGCG. Additionally, medical literature has found that natural EGCG and tea polyphenols have poor bioavailability and stability. Nevertheless, this is not the time for factual development. Notwithstanding Defendants' unsubstantiated assertion of facts to the contrary, Plaintiff has made a plausible assertion of fact and is entitled it be taken as true for purposes of Rule 12.

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1114 (S.D. Cal. 2011) and *Peviani v. Hostess Brands, Inc., 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010)* are of no help to Defendants since in those cases the terms used in the label complied with federal law. *Overton v. CVS Caremark Corp.*, No SACV 12-09282 DOC, 2012 U.S. Dist. LEXIS 185697 (C.D. Cal. Dec. 11, 2012) is also of no avail since it discusses § 343-1, which is but a small portion of Plaintiff's claims. *See* FN3, *supra*.

Finally, since Defendants violated both federal and California law a UCL claim would not result in a patchwork labeling requirement as Defendants suggest in their discussion of the Dormant Commerce Clause.[4] Defendants' disclosure of material safety risks of the product would comply with federal law and identical California law. Since Defendants are free to make the additional warnings complained of, there is no reason their label would vary from state to

---

[4] Defendants cite no law that permits a Rule 12 dismissal based on a violation of the Dormant Commerce Clause.

state. They have provided no reason why they could not use a label that complied with both federal and identical state law.

Thus, with the exception of the content of EGCG disclosure, none of Plaintiff's claims are preempted.

> 3. *There is no preemption since Defendants violated both federal and (identical) state law*

Defendants' preemption arguments suffer from a fundamental flaw: they assume Plaintiff is claiming Defendants violated state law, but fully complied with federal law. First of all, this is not a Motion for Summary Judgment. It is a Rule 12 motion and Plaintiff's allegations that Defendants have engaged in conduct that violates state law must be taken as true.

Second, as mentioned, Plaintiff alleges violations of state law that are identical or complementary to federal law. The Sherman Food, Drug, and Cosmetic Law (Cal. Health & Safety Code § 109875 *et seq.*) is California's version of the Federal Food Drug and Cosmetic Act and was intended to complement not conflict with federal law. Several alleged violations of California law contain identical language to the FDCA and others prohibit the same conduct even if the text is not identical.

For example, Cal. Health & Safety Code § 110660 and 21 U.S.C. 343(a) are identical. Both consider food misbranded if "its labeling is false or misleading in any particular." The state statute does not conflict with or add additional requirements; it is identical. Plaintiff has alleged Defendants produced a false and misleading label that failed to include warnings about significant side effects of Rehab Green Tea. Defendants' conduct violates both the state law cited and its identical federal counterpart. Similarly, Plaintiff alleges Defendant, by making unsubstantiated claims that are not truthful and misleading, violated Cal. Health & Safety Code § 110670, which references and specifically incorporates federal law: 21 U.S.C. 343(r).

As such, with the exception of disclosure of the amount of EGCG in Rehab Green Tea, none of Plaintiff's claims are preempted.

> 4.   *The Court Should Not Stay Proceedings Because the FDA and FTC Are Not Reviewing Rehab Green Tea for the Adequacy of Warnings with Respect to EGCG*

Realizing that Plaintiff's claims are not preempted, Defendants evoke primary jurisdiction. Primary jurisdiction does not implicate subject matter jurisdiction, but rather is a discretionary doctrine that courts occasionally use to abstain from deciding an issue that is likely to be reviewed by a federal agency. *Ries, supra, citing* S*yntek Semiconductor Co., Ltd. v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir.2002). To determine whether such discretion should be exercised courts use the following criteria: 1) the need to resolve an issue, 2) Congress has vested the power to decide that issue in an administrative body, 3) that power was vested by Congress pursuant to a statute that grants the body with comprehensive regulatory authority, and 4) the issue requires expertise or uniformity in administration. *Syntek*, 307 F.3d at 781. The doctrine is intended for very technical issues (like copyright registration in *Syntek*) or for issues of first impression. *Id.* The 9th Circuit warned that the doctrine "is not, as we have emphasized, a doctrine that 'require[s] that all claims within an agency's purview to be decided by the agency.'" *Id.* at 780. (citations omitted.)

In *Ries*, the court emphasized that Congress left states free to set their own standards of what are false and misleading labeling. *Ries, supra*. The court in *Ries* acknowledged the considerable expertise needed to determine the meaning of "natural" and chose to defer six months its decision on the meaning of "natural" to see if the FDA would issue a regulation. *Id. Ries* was not asked to deal with the routine failure to warn determination of whether omission of certain warnings of material risks was false and misleading. *Id.* Moreover, the claim of "natural" in this case differs from *Ries* because here the parties apparently agree on what would make use

13

of EGCG "natural": it is not "natural" if the EGCG used is "synthetic" (*See* Defendants' P & A, p. 12: 4-12, FAC, ¶ 36.)[5] Defendants' cite to *Mut. Pharm. Co. v. Watson Pharm., Inc.*, CV 09-5700 PA (RCX), 2009 WL 3401117 *1-2 (C.D. Cal. Oct. 19, 2009) is baffling since in that case Plaintiffs *admitted* allowing the court to *order products off the market* would infringe on FDA's primary jurisdiction and did not allege that the defendants made any literally false statements.

Defendants attempt to do exactly what the court in *Syntek* warned against: sweep in all of Plaintiff's claims to a primary jurisdiction discussion simply because FDA has within its purview broad powers to regulate food labeling and FTC broad powers to regulate advertising. However broad FDA's power over labeling or FTC's power over advertising[6], a determination of whether failing to disclose material safety risks is false and misleading is a routine exercise undertaken by courts requiring little technical expertise, and certainly not an issue of first impression. Defendants have not cited any case in which a court used the primary jurisdiction doctrine to defer judgment to FDA and/or FTC on the failure to disclose material safety risks. Nor would a court be inclined to do so since *Wyeth* championed the states' ability to determine such issues.[7]

---

[5] Nor is Defendants' argument in its Defendants' P & A, p. 11-12, FN11-12, conclusive since Plaintiff does not dispute that green tea contains EGCG, rather Plaintiff alleges that Defendants use a synthetic form of EGCG. (FAC, ¶ 36.) A definition that coincides, by the way, with FDA guidance. FDA, "What is the meaning of 'natural' on the label of food?" (http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm, accessed 03/14/2013.)

[6] Of note, Exhibit E of Defendants' Request for Judicial Notice contains a statement by the FTC that "The FTC does not have authority to seek civil penalties for violation of the FTC Act. . . . in appropriate cases, the FTC may request a federal district court to order consumer redress or disgorgement of profits." Thus, it is clear FTC does not have comprehensive regulatory authority to address the issues of this case and primary jurisdiction fails as to FTC under *Syntek* ab initio.

[7] This case is an even stronger case against preemption than *Wyeth* because this is not a case in which Defendants use a label with warnings that have been specifically approved by FDA, as was the case with the new drug approval requirements of pharmaceutical products at issue in *Wyeth*. Dietary supplement labels are not reviewed and approved by the FDA for the content of warnings as are pharmaceutical products. *See generally* Dietary Supplement Health and Education Act of 1994, P.L. 103-417. The maxim of *Wyeth* that a manufacturer is at all times responsible for the content of its label resounds even stronger here where the FDA never reviews warnings.

Moreover, while Defendants point to the fact that FDA and FTC may be reviewing energy drinks, they neglect to mention what is apparent from their Exhibits C and E: that the FDA and possible FTC review have to do with the safety of the quantity of caffeine in energy drinks not the presence of EGCG in Rehab Green Tea. Defendants attempt to use the mere fact that FDA/FTC is reviewing an entire category of products (energy drinks) for an unrelated issue (content of caffeine) to bolster its urge for the Court to respect FDA's and FTC's primary jurisdiction. Again, Defendants do exactly what *Syntek* cautioned against.

The Court should not stay or dismiss the proceedings based on primary jurisdiction because these are claims routinely analyzed by courts and neither the FDA nor FTC is currently reviewing the issues in this litigation.

D.    There is no Safe Harbor for Fraudulent Conduct

Safe harbor protects conduct that is authorized by specific legislation. *Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 973 P.2d 527 (1999).

Defendants' discussion of safe harbor is easily dispensed with. Defendants have absolutely no claim to safe harbor for their fraudulent conduct or any other conduct that was not authorized by law. The FDCA does not authorize misbranded, misleading or fraudulent labeling. 21 U.S.C. § 343(a). Nor does the FDCA authorize labels, even under more relaxed regulations for dietary supplements, that fail to disclose safety risks of the product. *Id.* Defendants point to no California law that would authorize the conduct alleged by Plaintiff. Defendants' conduct is *prohibited not authorized* by the FDCA.

Thus, Defendants are not entitled to safe harbor for their conduct.

E.    Plaintiff has Adequately Pled a UCL and CLRA Claim

As an initial matter, Plaintiff has standing because she suffered an "injury in fact" as

15

1    discussed *supra* in relation to Article III. Also, as discussed *infra* Plaintiff has clearly pled

2    reliance.

3         Defendants do not claim Plaintiff failed to plead each element required for a UCL or

4    CLRA claim. Nevertheless, Plaintiff has adequately pled that Defendants engaged in "unlawful,"

5    "unfair," and "fraudulent" acts and practices as well as "false and misleading advertising" in

6    violation of Business & Professions Code § 17200, which caused substantial injury to Plaintiff

7    and the Class. (FAC, ¶¶ 64-78.) Plaintiff then meticulously describes the specific factual support

8    for how each prong of § 17200 was met. (*Id.*)

9

10        Likewise, Plaintiff alleges each section of CLRA she claims were violated. (FAC, ¶¶ 55-

11   63.) Plaintiff incorporated all prior misrepresentations into the CLRA cause of action rather than

12   redundantly setting them out again but alleged generally that Defendants represented that Rehab

13   Green Tea was safe and effective as detailed elsewhere when they knew that such representations

14   were unsubstantiated, false and misleading. (FAC, ¶¶ 55, 58.) Plaintiff's compliance with

15   California Civil Code §1782 is described *infra*.

16

17        There is no dispute Plaintiff has adequately pled the UCL and CLRA causes of action.

18        F.    Plaintiff has Adequately Pled Reliance

19        Contrary to Defendants' claim otherwise, Plaintiff specifically alleges she relied on

20   Defendants' various misrepresentations contained in the labeling:

21

22        Plaintiff Wooding was exposed to, read **and relied** on **Defendants' advertising**

23        **claims, including Monster Rehab Green Tea + Energy's labeling**. . . .

24   (emphasis added.) (FAC, ¶ 12.) Each of these allegations is incorporated by reference at the

25   beginning of each cause of action: "Plaintiff realleges and incorporates by reference the

26   allegations contained in the paragraphs above as if fully set forth herein." (FAC, ¶¶ 55, 64, 79,

27   87, 99.) Thus, Plaintiff has adequately pled reliance on Defendants' various misrepresentations.

28

G.    Plaintiff has Adequately Alleged Breach of Express and Implied
      Warranties

      *1.    Plaintiff has adequately pled Breach of Express Warranties*

Express Warranty claims require the following elements: (a) seller's statement constitute an affirmation of fact or promise or description of goods, (b) the statement was a part of the basis of the bargain, and (c) the warranty was breached. *See, e.g.,  Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).

Plaintiff alleges that Defendants made several affirmations of fact, promises and descriptions of goods:

Defendants **expressly warranted that** Monster Rehab Green Tea + Energy:

(a)    **is "Naturally loaded with EGCG,"**

(b)    **"hydrates likes a sports drink,"**

(c)    **will "RE-HYDRATE, RE-VIVE, or in other words, Re-habilitate,"
       and**

(d)    **that it will help the consumer "recover from a long night," and
       "bring[s] [them] back after a hard day's night."**

(emphasis added.) (FAC ¶ 81.) These warranties affirm, promise and describe, among other things, Rehab Green Tea as being loaded with EGCG of a natural form and of rehydrating consumers.

Plaintiff then alleges numerous times throughout the Complaint that consumers and Plaintiff relied on these affirmations, descriptions and promises, which became the basis of the bargain for purchasing Rehab Green Tea:

      The terms of that contract include the promises and affirmations of fact made by
      Defendants on the Monster Rehab Green Tea + Energy packaging and through
      their marketing campaign, as described above.  Monster Rehab Green Tea +

Energy's packaging and advertising constitutes express warranties, **became part of the basis of the bargain**.

. . .

Contrary to Defendants' express and implied representations and warranties, **which Plaintiff and the Class relied** on to their detriment.

(emphasis added.( FAC, ¶¶ 80, 6.) In other words, the above warranties formed part of the basis of the benefit of the bargain because the affirmations of fact and promises by Defendant were part of the reason Plaintiff purchased and used the product.

Finally, Plaintiff explicitly states that Defendants breached the warranty:

Defendants knew or should have known that despite the above and other warranties alleged herein, **it had breached the terms of this contract, including the express warranties with Plaintiff and the Class** by providing Monster Rehab Green Tea + Energy which could not provide the benefits described above.

(emphasis added.) (FAC ¶ 82).

Thus, Plaintiff has adequately pled a cause for breach of express warranty.

        2.     *Plaintiff has adequately pled alleged Breach of Implied Warranties*

To adequately plead Implied Warranty of Merchantability, Plaintiff must allege that Rehab Green Tea did not do any of the following:

        (a)     Pass without objection in the trade under the contract description;

        (b)     In the case of fungible goods, are of fair average quality within the description;

        (c)     Are fit for the ordinary purposes for which such goods are used;

        (d)     Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e)      Are adequately contained, packaged, and labeled as the agreement may

require; or

(f)      Conform to the promises or affirmations of fact made on the container or

label if any.

*E.g.,* Cal. Uniform Commercial Code § 2314; *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 n. 14

(1975).

   Plaintiff has alleged that that Rehab Green Tea was (c) not fit for the ordinary purposes

for which such goods are used, (b) that it was not of fair average quality, (e) are not adequately

contained, packaged, and labeled as the agreement may require, and (f) that it did not conform to

the promises of affirmation of fact made on the container or label. Thus, Plaintiff alleged that

Rehab Green Tea was:

   unsafe, ineffective and not merchantable for ways which include, but are not

   limited to the fact, that EGCG, an ingredient in Monster Rehab Green Tea +

   Energy, is a toxic and potentially lethal ingredient that is well-documented in the

   medical literature to be associated with liver injuries, that Monster Rehab Green

   Tea + Energy could cause serious adverse side effects,  that persons with known

   liver conditions should not use the Monster Rehab Green Tea + Energy, that

   Monster Rehab Green Tea + Energy should not be used in conjunction with or

   shortly after drinking alcohol, that Monster Rehab Green Tea + Energy should not

   be used on a continuous basis, that Monster Rehab Green Tea + Energy should

   not be taken on an empty stomach, that consumers cannot self-identify in advance

   of taking Monster Rehab Green Tea + Energy whether they are susceptible to

   injury by taking the Product, that consumption of Monster Rehab Green Tea +

   Energy should cease and a doctor consulted upon appearance of symptoms of

   liver problems such as abdominal pain, dark urine or jaundice, and Monster

19

1
2
        Rehab Green Tea + Energy is not and has not been proven to be effective for its

        intended uses by competent and reliable scientific evidence.

3
4
(FAC ¶ 95.) No magic words are required and Plaintiff has thus adequately pled both that Rehab

5
Green Tea was not merchantable and that Defendants thus breached an implied duty of

6
merchantability. Plaintiff further elucidated the precise reasons why Rehab Green Tea was not

7
merchantable. She has done more than is required.

8
        Thus, Plaintiff has adequately pled breach of implied warranty.

9
        H.    Defendants' Misrepresentations Are More Than Puffery

10
        Misdescriptions of specific or absolute characteristics are examples of statements that are

11
not puffery, while "outrageous generalized statements" of product superiority are examples of

12
statements that are puffery. *In re Ferrero Litig.*, 794 F. Supp. 2d at 1115. However, whether a

13
statement is deceptive or is mere puffery is usually a question of fact, and only rarely appropriate

14
for decision as a matter of law on a motion to dismiss. *Id.* The court in *Ferrero* determined that

15
statements like "tasty yet balanced breakfast" were not mere puffery. *Id.* at 1115-16.

16

17
        Defendants' misrepresentations are not mere puffery. They are allegations about a state

18
of facts that is objectively not true and thus by its very nature is likely to deceive a consumer. As

19
an initial matter Plaintiff does not allege an amount of EGCG present in Rehab Green Tea. It can

20
reasonably be inferred, based on her other allegations, that Plaintiff alleges Defendants put a

21
large amount of EGCG in Rehab Green Tea. Defendants disingenuously claim "loaded" simply

22
means that the product "contains green tea." (Defendants' P & A, p. 22, FN 23.) However,

23
"loaded" is defined by the Oxford Dictionary as "containing in abundance or to excess." Thus, if

24
the statement is true and not misleading (notice Plaintiff does not specifically allege "loaded"

25
itself is false and misleading), it is clear Defendants' represent the product as containing an

26
abundance of EGCG; certainly more than the small amount present in green tea. If Rehab Green

27
Tea contained the small amount of EGCG naturally present in green tea, as Defendants now

28

suggest, then "loaded" is false and misleading. At any rate, "loaded" is not a claim of product superiority, but rather a specific and absolute description of the quantity of EGCG in the product. It is something that can be measured, even if Defendants chose not to indicate the precise measurement on the labeling.

"Natural" is not specifically defined by FDA, but FDA objects to its use if a substance is synthetic. FDA, "What is the meaning of 'natural' on the label of food?" (http://www.fda.gov/AboutFDA/Transparency/ Basics/ucm214868.htm accessed 03/14/2013) This is a concrete and specific representation that is easily disproved as factually incorrect if EGCG is synthetically created.

Finally, "hydrate[s]" is defined by www.thefreedictionary.com to mean "to supply water to . . . in order to restore or maintain fluid balance." This is a specific representation about the characteristic of Rehab Green Tea. The fact that it contains diuretics which Plaintiff alleges cause fluid loss as described in the medical literature makes it a specific statement that is capable of being objectively disproved.

Notably, none of the above representations relate to product superiority, or are anything other than a specific representation, and as such, are not subject to a determination they are puffery for purposes of this Rule 12 Motion. Thus, the misrepresentations alleged by Plaintiff are not mere puffery.

I.      Unjust Enrichment

Plaintiff concedes Unjust Enrichment is not an independent Cause of Action permitted in California but rather a theory of recovery that underlies her UCL, CLRA and Warranty claims and will amend her First Amended Complaint to remove this cause of action.

J.      Plaintiff has Complied with CLRA Notice Requirements

California Civil Code §1782 of the CLRA required of Plaintiff 30-day written notice to

Defendants of alleged violations of § 1770 of CLRA before making claims for punitive and statutory damages under CLRA.

Defendants' argument that Plaintiff did not comply with CLRA notice requirements is spurious. On November 5, 2012, Plaintiff filed her Complaint in Orange County Superior Court. Higgins Decl., ¶ 2.). On November 7, 2012, Plaintiff sent via priority mail, delivery confirmation, a cover letter notifying Defendants of various violations of section 1770 of CLRA with a more detailed description of such violations in the form of the original Complaint which was attached to the cover letter. (Higgins Decl., ¶ 3.) A search of the delivery confirmation /tracking number listed on the cover letter (0312086000044358835) indicates that the U.S. Postal Service successfully delivered said letter to the address listed on the cover letter (550 Monica Cir. Ste 201, Corona, CA 92880), on November 8, 2012. (Higgins Dec., ¶ 4.) Defendants do not claim their corporate headquarters address is anything other than: 550 Monica Cir. Ste 201, Corona, CA 92880. It is thus incontrovertible that on November 8, 2012, USPS successfully delivered to Defendants the attached letter notifying Defendants of violations of section 1770.

It is also not in dispute that the original Complaint filed on November 5, 2012 did not contain claims for punitive and statutory damages under CLRA. (Class Action Complaint, ¶¶ 56, 58.) Such claims were added in the First Amended Complaint, filed on February 1, 2013, more than 30 days after notifying Defendants of the violations on November 7, 2012. (FAC, ¶ 61.) During that period Defendants do not dispute they failed to rectify or make Plaintiff or the class whole. Moreover, in conversations with opposing counsel, it is clear that Defendants had a copy of the letter. (Higgins Decl., ¶ 5.) It is thus inconceivable how Defendants did not receive notice under CLRA.

Thus, Plaintiff has fully complied with the requirements of CLRA.

## III.   CONCLUSION

For the reasons stated herein, and except for the Unjust Enrichment claim and the claim as to disclosure of the exact amount of EGCG used in the product, Defendants' Motion to Dismiss should be DENIED in its entirety. Should the Court determine any claims are insufficiently pled, Plaintiff respectfully requests Leave to Amend her First Amended Complaint in accord with the Court's guidance.

Date:  April 4, 2013                              ___/s/ Sean Higgins_____

ANDREWS & THORNTON
2 Corporate Park, Suite 110
Irvine, California 92606
Phone: (949) 748-1000
Facsimile: (949) 315-3540
Anne Andrews (SBN. 103280)
John C. Thornton (SBN. 84492)
Sean Thomas Higgins (SBN 266888)

Points & Authorities in Opposition to Motion to Dismiss

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th of April, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ Sean Thomas Higgins*
Sean Thomas Higgins

***Attorney for Plaintiffs***

1
CERTIFICATE OF SERVICE